# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
### BLUEFIELD DIVISION

**MICHAEL BARNHILL,**

    **Plaintiff,**

v.

                                                           **Civil Action No. 1:25-cv-00356**

**MOUNTAIN VALLEY PIPELINE, LLC,**
a Pennsylvania limited liability company;
**EQUITRANS MIDSTREAM CORPORATION,**
a Pennsylvania corporation; and
**EQT CORPORATION,** a Pennsylvania corporation,

    **Defendants.**

## **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

This matter arises out of the alleged wrongful termination of the Plaintiff Michael Barnhill. Plaintiff asserts that his employment[1] was terminated after he raised concerns regarding Defendants' compliance with the regulations of the Pipeline and Hazardous Materials Safety Administration. Defendants move to dismiss this action, in its entirety, on the basis that Plaintiff's common law wrongful discharge claim is preempted by federal law. PHMSA's enabling statute, the Pipeline Safety Act, expressly preempts state law in the field of interstate pipeline safety. In addition, the Pipeline Safety Act contains a comprehensive statutory scheme governing the precise conduct alleged in Plaintiff's Complaint, which preempts Plaintiff's state common law claims and provides Plaintiff with an adequate statutory remedy. Consequently, Plaintiff's common-law wrongful discharge claim must be dismissed as a matter of law. Plaintiff's claim independently

---

[1] No Defendant ever employed Plaintiff and, therefore, could not have terminated his employment. Defendants reserve all arguments and defenses arising from the fact that Defendants never employed Plaintiff.

fails because West Virginia law does not recognize the PHSMA regulations[2] as a clear and substantial public policy sufficient to provide Plaintiff with a cause of action under the alleged circumstances.

Defendants Mountain Valley Pipeline, LLC, The Midstream Company LLC (f/k/a Equitrans Midstream Corporation), and EQT Corporation (together, unless otherwise noted, the "Defendants"), by counsel, submit this Memorandum of Law in Support of their contemporaneously filed Motion to Dismiss and request that Plaintiff's Complaint be dismissed, with prejudice.

## STATEMENT OF FACTS

Plaintiff's Complaint alleges a single cause of action for wrongful termination in violation of public policy. Plaintiff asserts that he was wrongfully terminated "for raising concerns with and making complaints to Defendants related to safety issues including improperly welded pipelines and quality of pipes as well as other PHMSA regulations."[3]  *See* Complaint ¶ 57.

Plaintiff avers that Defendant MVP owns the Mountain Valley Pipeline project, "a natural gas pipeline spanning 303 miles across West Virginia and Virginia." *Id.* at ¶ 7. Plaintiff alleges that he worked as a welding inspector on the Mountain Valley Pipeline project beginning in August 2023. *Id.* at ¶ 6. Plaintiff alleges that, as a welding inspector, he "was tasked with inspecting welds on the pipeline as they occurred and ensuring that pipeline joints followed project and federal

---

[2] PHMSA is the agency within the United States Department of Transportation responsible for developing and enforcing regulations for the transportation of energy and other hazardous materials.

[3] Defendants dispute and object to Plaintiff's characterization that Defendants did not comply with the applicable safety or regulatory standards. In the event that the Complaint is not dismissed (which it should be), further proceedings in this action will show that Defendants did not violate pipeline safety regulations or standards as alleged in the Complaint. Defendants reserve all rights, claims, and causes of action that they have or may have as a result of Plaintiff's false or misleading statements.

regulations." *Id.* at ¶ 11. Plaintiff asserts that on November 15, 2023, he discovered corrosion in a particular area of the pipeline which "was of such significance to bring these sections of pipeline out of compliance with construction specifications and federal regulations." *Id.* at ¶ 14. Plaintiff asserts that he reported the condition of the pipeline to Defendants on that same date. *See id.* at ¶ 17. Plaintiff asserts that he later reported the allegedly corroded pipe joints to PHMSA. *See id.* at ¶ 27.

Plaintiff asserts that, on December 5, 2023, Plaintiff discovered a weld on the pipeline "that was made without an inspector present." *Id.* at ¶ 28. Plaintiff alleges that "MVP's construction specifications require an inspector to be present for all welds on the pipeline" and that "[b]ecause federal regulations for pipeline construction encompass MVP's construction specifications, any pipeline weld performed without an inspector present is out of compliance with federal regulations." *Id.* at ¶ 29–30. Plaintiff asserts that he reported the incident to his supervisor. *Id.* at ¶ 32. He further alleges that he reported the incident to the PHMSA by email dated December 7, 2023. *Id.* at ¶ 49. Plaintiff alleges that he was terminated on December 8, 2023. *Id.* at ¶ 56.[4]

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move for dismissal upon the grounds that a complaint does not "state a claim upon which relief can be granted." In ruling on a motion to dismiss, a court "must accept as true all of the factual allegations contained in the Complaint." *Anderson v. Sara Lee Corp.*, 508 F.3d 181, 188 (4th Cir. 2007) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). However, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

---

[4] Defendants reiterate that no Defendant ever employed Plaintiff and reserve all rights to raise defenses relating to Plaintiff's employment status.

A motion to dismiss under Rule 12(b)(6) tests the "legal sufficiency of a Complaint." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). A claim must be dismissed if the complaint does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). The factual allegations "must be enough to raise a right to relief above a speculative level." *Twombly*, 550 U.S. at 545. The facts must constitute more than "a formulaic recitation of the elements of a cause of action." *Id.* at 555. A motion to dismiss "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 942, 952 (4th Cir. 1992).

## ARGUMENT

**A.     Plaintiff's wrongful discharge claim is preempted by the Pipeline Safety Act.**

The United States Congress has provided the Pipeline and Hazardous Materials Safety Administration (PHMSA) with authority to regulate the safety of natural gas pipeline facilities and persons engaged in the transportation of natural gas. PHMSA's enabling statute, the Pipeline Safety Act, 49 U.S.C. §§ 60101–60140, was enacted for the express purpose "to provide adequate protection against risks to life and property posed by pipeline transportation and pipeline facilities by improving the regulatory and enforcement authority of the Secretary of Transportation." 49 U.S.C. § 60102. Plaintiff concedes that his claim arises from his work on an interstate pipeline, that the pipeline is subject to PHMSA regulation, and that the PHMSA regulations are the "substantial public policy" giving rise to his claim. (*See* Complaint, ¶¶ 6, 7, 26–27, 30, 47, 49, 57). As is evident from his Complaint, Plaintiff contends that he was a whistleblower who objected to

alleged improperly welded pipelines and other purported violations of the PHMSA regulations. Accordingly, any state law cause of action for Plaintiff's pipeline-safety-related whistleblower claims is completely preempted by the Pipeline Safety Act.

Congress has the authority to expressly preempt state law by defining the scope of preemption or to impliedly preempt state law where congressional intent to supersede state law may be inferred. *See* U.S. Const., Art. VI, Cl. 2; *Fid. Fed. Sav. & Loan Ass'n v. dela Cuesta,* 458 U.S. 141, 152–53 (1982). Whether a state cause of action is preempted in a particular case is a question of congressional intent. *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 208 (1985). That intent can be inferred from a "scheme of federal regulation . . . so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it," or where an Act of Congress "touch[es] a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." *Eng. v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990) (quoting *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218 (1947)).

The Pipeline Safety Act contains an express preemption provision which provides, in relevant part, that a "State authority may not adopt or continue in force safety standards for interstate pipeline facilities or interstate pipeline transportation[,]" except with respect to administering one-call notification (or damage prevention) programs that meet certain statutory requirements.[5] 49 U.S.C. § 60104(c). The Fourth Circuit has considered the scope of preemption

---

[5] A one-call notification program is defined as "a system operated by an organization that has as 1 of its purposes to receive notification from excavators of intended excavation in a specified area in order to disseminate such notification to underground facility operators that are members of the system so that such operators can locate and mark their facilities in order to prevent damage to underground facilities in the course of such excavation." 49 U.S.C § 6102(1); *see also* 49 C.F.R. § 198.37. Under the Pipeline Safety Act, a state one-call program must, at a minimum, provide for (1) participation by all underground facility operators, (2) by all excavators, and (3) be flexible and effective enforcement. 49 U.S.C. § 6103(a)(1)(A)–(C).

under the Pipeline Safety Act and determined that the text of the statute, "its legislative history, administration implementation, and judicial interpretation, attest to federal preemption of the field of safety with respect to the establishment and enforcement of standards regulating the interstate transmission of gas by pipeline." *Washington Gas Light Co. v. Prince George's Cnty. Council*, 711 F.3d 412, 420 (4th Cir. 2013) (quoting *Tenneco Inc. v. Pub. Serv. Comm'n of W. Va.,* 489 F.2d 334, 336 (4th Cir. 1973).

Moreover, the comprehensive nature of the procedures outlined in the Pipeline Safety Act's anti-retaliation provision, 49 U.S.C.A. § 60129, indicates that Congress intended the anti-retaliation provision to provide the sole and exclusive remedy for pipeline whistleblowers. Under § 60129(a) it is unlawful for a pipeline owner or a contractor or subcontractor of a pipeline owner to discharge an employee or otherwise discriminate against an employee because he has "provided, caused to be provided, or is about to provide or cause to be provided, to the employer or the Federal Government information relating to any violation or alleged violation of any order, regulation, or standard under this chapter or any other Federal law relating to pipeline safety" or "refused to engage in any practice made unlawful by this chapter or any other Federal law relating to pipeline safety, if the employee has identified the alleged illegality to the employer." *Id.* at § 60129(a)(1)–(2). The federal cause of action articulated in § 60129 of the Pipeline Safety Act authorizes anyone "who believes that he or she has been discharged or otherwise discriminated against by any person in violation of [the anti-retaliation provision]" to file a whistleblower claim with the Secretary of Labor and to enforce any order issued by the Secretary through a private cause of action. *See id.* at § 60129(b). If the Secretary of Labor determines that the employer has violated the anti-retaliation provision, the Secretary may enter an order requiring the employer to reinstate the

employee with back pay and to "provide compensatory damages" and costs, including attorneys' fees. *See id.* at § 60129(b)(3)(B).

In addition to providing robust protections for pipeline safety whistleblowers, the anti-retaliation provision also includes safeguards for pipeline owners and operators. For example, the anti-retaliation provision provides that, in the event the Secretary of Labor finds that a whistleblower complaint "is frivolous or has been brought in bad faith," the prevailing employer may be awarded reasonable attorneys' fees. *Id.* at § 60129(3)(C). Additionally, the anti-retaliation procedures are not available where the whistleblower "act[ed] without direction from the employer (or such employer's agent)" and "deliberately causes a violation of any requirement relating to pipeline safety[.]" *Id.* at § 60129(d).

The fact that the anti-retaliation provision provides a comprehensive scheme for raising pipeline whistleblower complaints, authorizes specific remedies for pipeline whistleblowers, and seeks to protect pipeline owners and operators from frivolous whistleblower claims is strong evidence of Congress's clear intent to preempt state law whistleblower claims related to pipeline safety.

Courts reviewing preemption arguments under analogous federal whistleblower statutes have reached the same conclusion. For example, in *Rayner v. Smirl*, the Fourth Circuit considered whether the whistleblower provision of the Federal Railroad Safety Act of 1970, 84 Stat. 971, as amended, 45 U.S.C. § 421–44 (now repealed), preempted a Maryland state law action for the wrongful discharge of a railroad employee who reported railroad safety violations of his employer. 873 F.2d 60 (4th Cir. 1989). The version of the Railroad Safety Act whistleblower provision in

effect at the time of plaintiff's claim is similar to the current Pipeline Safety Act whistleblower provision, and provided that:

> A common carrier by railroad engaged in interstate or foreign commerce may not discharge or in any manner discriminate against any employee because such employee, whether acting in his own behalf or in a representative capacity, has—
>
> (1) filed any complaint or instituted or caused to be instituted any proceeding under or related to the enforcement of the Federal railroad safety laws; or
>
> (2) testified or is about to testify in any such proceeding.

*Id.* at 63 (quoting 45 U.S.C. § 441(a)). Like the Pipeline Safety Act, the operative version of the Railroad Safety Act contained an explicit preemption provision. *See id.* at 65 (quoting 45 U.S.C. § 434). The Fourth Circuit found that "[t]he comprehensive remedial scheme for aggrieved railroad employees provided in [the Railroad Safety Act whistleblower provision] serves to confirm its preemptive scope" and "illustrates a congressional intent that the FRSA remedy for railroad 'whistleblowers' be exclusive." *Id.* at 65. Accordingly, the Fourth Circuit held that the federal whistleblower provision preempted plaintiff's state wrongful discharge action and affirmed the dismissal of plaintiff's action for failure to pursue his federal administrative remedies. *Id.*

The same result was reached by several Federal District Courts. *See e.g. Sereda v. Burlington N. Santa Fe Ry. Co.,* No. 4:03–cv–10431, 2005 WL 5892133, *7 (S.D. Iowa 2005) ("Congress intended [Railroad Safety Act whistleblower provision] to serve as the exclusive means by which railroad employees could obtain relief from discrimination based on their reporting of employer safety violations."); *Bee v. BNSF Ry. Co.*, No. CIV. 07-3576 DWF/JJK, 2008 WL 4527827, at *4 (D. Minn. Sept. 29, 2008) (Minesota state whistleblower claim preempted by FRSA).

Had Congress not intended the Pipeline Safety Act to preempt related state law claims, it could have easily added language to that effect. Indeed, following the above-listed cases, Congress

repealed and amended the Federal Railroad Safety Act whistleblower provision to expressly authorize state law wrongful discharge claims. While the complaint and appeal procedures outlined in the current version of the Federal Railroad Safety Act whistleblower provision are substantially similar to the procedures in the Pipeline Safety Act, as of 2008, the Railroad Safety Act provision also expressly provides that:

> Nothing in this section preempts or diminishes any other safeguards against discrimination, demotion, discharge, suspension, threats, harassment, reprimand, retaliation, or any other manner of discrimination provided by Federal or State law.

49 U.S.C.A. § 20109(g). The Pipeline Safety Act—which was most recently amended in 2020—does not include a similar "no preemption" provision. The absence of such a provision supports a finding that Congress intended that § 60129 provide an exclusive remedy and requires dismissal of the instant action.

**B.      Plaintiff has not fulfilled the procedural prerequisites to bring an action under the Pipeline Safety Act.**

As noted above, any employee who believes he or she has been retaliated against for voicing pipeline safety complaints must follow the procedures outlined in the Pipeline Safety Act § 60129. A Pipeline Safety Act whistleblower cannot bring his claim straight to court. He must first file an administrative complaint with the Secretary of Labor alleging that he has been discharged or otherwise discriminated against in violation of the statute's anti-retaliation protections. *See* 49 U.S.C.A. at § 60129(b)(1). This complaint must be filed "not later than 180 days after the date on which such violation occurs[.]" *Id.* Either party may then obtain review of the Secretary's order in an appropriate United States Court of Appeals. *See id.* at § 60129(b)(4). Once the Secretary's order becomes final, either the Secretary or the employee may initiate a cause of action in the appropriate federal district court to enforce the order. *See id.* at § 60129(b)(5)–(6). If the Secretary of Labor has not issued a final decision within 210 days of the complaint, "and if

the delay is not due to the bad faith of the employee who filed the complaint," the whistleblower may bring an action "for de novo review in the appropriate district court of the United States[.]" *Id.* at § 60129(b)(3)(D). Unless and until those procedures are exhausted, the employee may not assert a civil action challenging his termination. Because Plaintiff has not fulfilled the procedural prerequisites to file a pipeline safety whistleblower claim, his claim must be dismissed for failure to exhaust his administrative remedies.

C.      **Plaintiff fails to state a claim for wrongful discharge under West Virginia law.**

Even if Plaintiff's wrongful discharge claim was not preempted by federal law (it is), his Complaint must be dismissed for failure to state a claim. West Virginia law "presumes that employment is terminable at will, permitting an employer to discharge an employee for cause, for no cause, or even for wrong cause." *Mace v. Charleston Area Med. Ctr. Found., Inc.*, 422 S.E.2d 624, 630 (W. Va. 1992). In *Harless v. First National Bank in Fairmont* the Supreme Court of Appeals of West Virginia recognized a "limited exception" to the at-will employment doctrine where an employee is terminated in violation of public policy. *See* 246 S.E.2d 270 (W. Va. 1978). The *Harless* exception recognizes that the at-will employment doctrine "must be tempered by the principle that where the employer's motivation for the discharge is to contravene some substantial public policy principle, then the employer may be liable to the employee for damages occasioned by this discharge." *Id.* at Syl. Pt. 1. For the reasons discussed below, Plaintiff fails to state a claim

under *Harless*. Accordingly, Defendants request that Plaintiff's complaint be dismissed, with prejudice.

> **1.   Plaintiff cannot pursue his common-law wrongful discharge claim, as a matter of law, because a comprehensive statutory remedy exists for the very harm Plaintiff alleges to have suffered.**

"The purpose of a *Harless* claim is to enable persons whose termination violated substantial public policy to recover against their employer when there is no other mechanism available to enforce the public policy at issue." *Edmonds v. Altice Tech. Servs. US LLC*, 413 F. Supp. 3d 488, 493 (S.D.W. Va. 2019) (Faber, J.) (quoting *Hill v. Stowers*, 680 S.E.2d 66, 76 (W. Va. 2009)); *see also Griffith v. Chemours Co.*, No. 2:21-CV-00368, 2021 WL 4303391, at *3 (S.D.W. Va. Sept. 21, 2021) (Berger, J.) ("A *Harless* claim only exists where the statutory remedy is inadequate, or where there is no other private cause of action to enforce the public policy at issue."); *Nichols v. Cnty. Comm'n of Cabell Cnty.*, No. CV 3:18-0266, 2018 WL 4016311, at *9 (S.D.W. Va. Aug. 22, 2018) (Chambers, J.) ("[T]he Supreme Court [of Appeals of West Virginia] made clear that a *Harless* claim is unavailable when the legislature has created 'procedures' that will enforce the West Virginia public policy at issue."). Accordingly, courts routinely dismiss common law wrongful discharge claims where a statutory remedy exists to redress the alleged wrong. *See e.g. Broschart v. W. Va. Dep't of Health & Human Res.*, 2013 WL 2301777, at *1 (W. Va. 2013) (upholding dismissal of plaintiff's *Harless* action when a remedy was available under West Virginia's whistleblower law); *Jackson v. Vaughn*, No. 1:15CV128, 2015 WL 6394510, at *1 (N.D.W. Va. Oct. 22, 2015) (granting motion to dismiss and noting "a *Harless* cause of action is superfluous when a public policy is enforceable by a statutory cause of action.").

In *Guevara v. K-Mart Corporation*, the Southern District of West Virginia held that Plaintiff's *Harless* claim was preempted by the West Virginia Human Rights Act because that

statute provided an express remedy for wrongful discharge. 629 F. Supp. 1189, 1191 (S.D. W. Va. 1986) (Haden, C.J.). In reaching that conclusion, the Court noted that "[w]here the Legislature has provided a comprehensive remedial scheme, there is a strong indication that the Legislature intended the remedy to be exclusive." *Id.*; *see also Rigsby v. Liberty Mut. Ins. Co.*, No. CV 2:08-00185, 2008 WL 11380418, at *2 (S.D.W. Va. May 2, 2008) (Faber, J.) ("Where a plaintiff brings suit under the West Virginia Human Rights Act to redress unlawful discrimination, however, he is limited to the remedy afforded him under the Act, and may not claim relief by way of a *Harless*-type action."). The Southern District of West Virginia reached a similar conclusion in the matter *Wiley v. Asplundh Tree Expert Company* where it determined that the Fair Labor Standards Act provided the "exclusive remedy" for plaintiff's alleged wrongful termination where Congress "provided a carefully tailored statutory scheme aimed at providing a means of redress for a person who is the victim of a retaliatory discharge." 4 F. Supp. 3d 840, 850 (S.D. W. Va. 2014) (Johnston, J.).

Like the WVHRA and the FLSA, the federal pipeline safety statute contains a comprehensive anti-retaliation provision. As in *Guevera* and *Wiley*, it can be inferred here from "the comprehensive nature of the system implemented by the Legislature" that Congress intended the anti-retaliation provision of the Pipeline Safety Act to provide an exclusive remedy for Plaintiff's alleged harm. *See Guevara*, 629 F. Supp. at 1191.

Plaintiff alleges that he was terminated in violation of public policy for raising concerns regarding Defendants' compliance with federal PHMSA regulations. Compl. ¶ 57. Plaintiff concedes that his claims arise from his work on an interstate pipeline, that the pipeline is subject to PHMSA regulation, and that the alleged substantial public policy upon which his claims are based are PHMSA regulations. *See* Complaint, ¶¶ 6, 7, 26–27, 30, 47, 49, 57. Plaintiff's wrongful

discharge claim is, therefore, superfluous because the federal Pipeline Safety Act provides a comprehensive and adequate remedy for wrongful discharge.[6] The anti-retaliation provision of the Pipeline Safety Act states, in relevant part, that:

> No employer[7] may discharge any employee or otherwise discriminate against any current or former employee with respect to his compensation, terms, conditions, or privileges of employment because the employee (or any person acting pursuant to a request of the employee) –
>
> (A)    provided, caused to be provided, or is about to provide or cause to be provided, to the employer or the Federal Government information relating to any violation or alleged violation of any order, regulation, or standard under this chapter [49 USCS §§ 60101 et seq.] or any other Federal law relating to pipeline safety;
>
> (B)    refused to engage in any practice made unlawful by this chapter [49 USCS §§ 60101 et seq.] or any other Federal law relating to pipeline safety, if the employee has identified the alleged illegality to the employer; […]

49 U.S.C.A. § 60129(a)(1)(A)–(B). As discussed, the anti-retaliation provision outlines a detailed enforcement mechanism which requires "[a] person who believes that he or she has been discharged or otherwise discriminated against" to file a complaint with the Secretary of Labor "not later than 180 days after the date on which such violation occurs" (*id.* at § 60129(b)(1)) and authorizes certain specific remedies if a violation is found. *Id.* at § 60129(b)(3)(B).

Because the Pipeline Safety Act anti-retaliation provision clearly provides a comprehensive statutory remedy for the harm alleged in the Complaint, Plaintiff is limited to pursuing relief under that statute and cannot maintain a *Harless* wrongful discharge claim as a matter of law.

---

[6] The federal pipeline safety statute was enacted "to provide adequate protection against risks to life and property posed by pipeline transportation and pipeline facilities by improving the regulatory and enforcement authority of the Secretary of Transportation." 49 U.S.C.A. § 60102(a)(1). The statute directs the Secretary of Transportation to "prescribe minimum safety standards for pipeline transportation and for pipeline facilities." *Id.* at § 60102(a)(2).

[7] Under 49 U.S.C. § 60129, "employer" is defined as "(A) a person owning or operating a pipeline facility; or (B) a contractor or subcontractor of such a person."

2.     **The regulations cited by Plaintiff are not, as a matter of law, a source of substantial public policy of the state of West Virginia which could support a claim for wrongful discharge in violation of public policy.**

Even assuming Plaintiff could pursue a common law wrongful discharge claim where there is an existing statutory remedy for the harm he alleges (he cannot), Plaintiff's claim fails because the federal PHMSA regulations upon which he bases his claim are not a source of "substantial public policy." To state a *Harless* wrongful discharge claim, Plaintiff must allege:

(1)     That a clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the clarity element);

(2)     That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element);

(3)     That plaintiff's dismissal was motivated by conduct related to the public policy (the causation elements);

(4)     The employer lacked overriding legitimate business justification for the dismissal (the overriding justification element).

*Herbert J. Thomas Memorial Hosp. Ass'n v. Nutter*, 795 S.E.2d 530, 541 (W. Va. 2016).

Whether a "substantial public policy" exists "is a question of law, rather than a question of fact for a jury." Syl. Pt. 1, *Cordle v. General Hugh Mercer Corp.*, 325 S.E.2d 111 (W.Va. 1984). The existence of a "substantial public policy" as articulated in *Harless* must be construed narrowly. *See Washington v. Union Carbide Corp.*, 870 F.2d 957, 962 (4th Cir. 1989). The burden of establishing the existence of a substantial public policy rests with the plaintiff. Syl. Pt. 8, *Page v. Columbia Natural Res.*, 480 S.E.2d 817 (W.Va. 1996).

Plaintiff has not identified, and cannot identify, a source or substantial public policy "manifested in a state or federal constitution, statute or administrative regulation, or in the common law" that supports his *Harless* claim. Plaintiff asserts that, prior to his termination, he reported violations that would bring certain sections of the subject-pipeline "out of compliance with

construction specifications and federal regulations" (Compl. ¶ 14) [8] to both his supervisors and to the PHMSA. *See id.* ¶¶ 15, 26–27, 49. He argues that he was then terminated for "raising concerns with and making complaints to Defendants related to safety issues including improperly welded pipelines and quality of pies as well as other PHMSA regulations." Compl. ¶ 57. Plaintiff's general reference to "federal regulations" and "PHMSA regulations" is not sufficiently specific to support his claim.

"[A] *Harless* retaliatory discharge claim cannot lie absent a substantial West Virginia public policy allegedly violated in terminating the employee." *Frohnapfel v. ArcelorMittal USA LLC*, 772 S.E.2d 350, 354 (W.Va. 2015) (citing *Shell v. Metropolitan Life Ins. Co.*, 396 S.E.2d 174, 180 (W.Va.1990)). In order to successfully plead a *Harless* wrongful discharge claim, the Complaint must specify the source of the public policy allegedly violated by Plaintiff's termination. *See Wiley*, 4 F. Supp. 3d at 845. "With no such assertion, there is no way a court could evaluate the plausibility of the claim." *Id.* Plaintiff has not identified any authority indicating that West Virginia has recognized the federal pipeline safety regulations of interstate pipelines as a source of "substantial public policy" sufficient to support a *Harless* wrongful discharge claim. Absent such allegations, Plaintiff cannot meet his burden to establish the existence of a "substantial public policy."

The Supreme Court of Appeals has cautioned courts to exercise "the power to declare an employer's conduct as contrary to public policy with restraint" and to instead to defer to policy determinations of the West Virginia legislature. *See Shell*, 396 S.E.2d at 180. Although courts may

---

[8] Defendants reiterate their objections to Plaintiff's false and misleading characterization of the events underlying this Complaint. Defendants maintain that Defendants complied with applicable standards and reserve any and all rights, claims and causes of action they have or may have as a result of Plaintiff's statements.

look to "established precepts in [the West Virginia] constitution, legislative enactments, legislatively approved regulations, and judicial opinions" in determining whether a substantial public policy exists (*Birthisel v. Tri–Cities Health Servs. Corp.,* 424 S.E.2d 606, 612 (W. Va. 1992)), *Harless* claims "are generally based on a public policy articulated by the legislature." *Swears v. R.M. Roach & Sons, Inc.*, 696 S.E.2d 1, 5–6 (W. Va. 2010) (citing *Shell*, 396 S.E.2d at 180). The "heightened requirement of demonstrating a 'substantial public policy,' as opposed to a 'stated public policy,' reflects the reticence of courts to recognize additional grounds on which a plaintiff can make a claim for retaliatory discharge." *Hundley v. Autism Servs. Ctr., Inc.*, No. CV 3:17-3818, 2017 WL 4560187, at *5 (S.D. W. Va. Oct. 12, 2017) (Chambers, J.) (citations omitted).

Federal courts are permitted "to rule upon state law as it presently exists and not to surmise or suggest its expansion." *See Abel v. Niche Polymer, LLC*, 468 F. Supp. 3d 719, 724 (S.D. W. Va. 2020) (Johnston, C.J.) (quoting *Washington*, 870 F.2d at 962). Recognizing that role, the United States Court of Appeals for the Fourth Circuit has advised that federal courts are constrained from recognizing a statute as a source of substantial public policy under *Harless* where the West Virginia state courts have not made such a determination, noting:

> [W]e reaffirm our decision in *Washington*, and hold that a state claim which has not been recognized by that jurisdiction's own courts constitutes a settled question of law, which will not be disturbed by this court absent the most compelling of circumstances.

*Garst v. Tritle v. Crown Airways, Inc.*, 928 F.2d 81, 84 (4th Cir. 1990) (emphasis added) (affirming decision to dismiss *Harless* claim where "[t]he West Virginia courts have not yet addressed the question whether either or both of these statutes [W. Va. Code § 29–2A–12 or W. Va. Code § 29–2A–20] support a *Harless* right of action.").

The Fourth Circuit rejected an analogous argument in *Washington v. Union Carbide Corporation* where the plaintiff employee asserted that the defendant employer "violated the public policy of West Virginia by discharging him in retaliation for filing safety complaints with the company." *See* 870 F.2d at 958. The Fourth Circuit affirmed the trial court's decision to enter judgment in favor of defendant on the basis that the employee failed to identify a source of express public policy that had been contravened by the employer. *Id.* at 963. In doing so, the Circuit Court noted that "[i]t is clear that statutory recognition of an action for retaliatory discharge for reporting safety violations has not been generally conferred in West Virginia." *See* 870 F.2d at 964.

Similarly, the plaintiff in *Abel v. Niche Polymer* alleged that he was wrongfully terminated for reporting workplace safety violations to his employer. 468 F. Supp. 3d 719. In support of his *Harless* claim, the plaintiff alleged that the Safety and Welfare of Employees Act, W. Va. Code § 21-3-1 mandated a clear public policy that protects workplace safety. *See id.* at 723. The court granted defendant's motion to dismiss, noting that because "the West Virginia Supreme Court of Appeals has not addressed whether W. Va. Code § 21-3-1 confers a substantial public policy protecting workplace safety," the federal court was constrained from making such a determination. *Id.* at 724; *see also Wiley*, 4 F. Supp. 3d at 845 (declining to recognize *Harless* claim under section of West Virginia Wage Payment Collection Act that the Supreme Court of Appeals had never held created such a claim).

Plaintiff has not identified any West Virginia state court opinion or other source of West Virginia law that recognizes the PHMSA's pipeline safety regulations as a source of "substantial public policy" that would support a *Harless* retaliatory discharge claim. Absent such authority, Plaintiff's claim fails as a matter of law and must be dismissed.

## CONCLUSION

As set forth above, Plaintiff's common law wrongful discharge claim is preempted by the comprehensive Pipeline Safety Act anti-retaliation provision. Moreover, Plaintiff fails to identify a substantial public policy upon which he can base his *Harless* claim. Therefore, Plaintiff's retaliatory discharge claim fails as a matter of law. Because Plaintiff has not stated a claim for which relief may be granted, his Complaint must be dismissed.

**MOUNTAIN VALLEY PIPELINE, LLC,
THE MIDSTREAM COMPANY (F/K/A
EQUITRANS MIDSTREAM CORPORATION),
and EQT CORPORATION,**

**By Counsel**

 */s/ Jennifer J. Hicks*
Jennifer J. Hicks, Esquire (WVSB #11423)
Timothy M. Miller, Esquire (WVSB #2564)
Babst, Calland, Clements & Zomnir, P.C.
300 Summers Street, Suite 1000
Charleston, WV 25301
681-205-8888
681-205-8814 (fax)
jhicks@babstcalland.com
tmiller@babstcalland.com

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BLUEFIELD DIVISION

**MICHAEL BARNHILL,**

    **Plaintiff,**

**v.**

                                 **Civil Action No. 1:25-cv-00356**

**MOUNTAIN VALLEY PIPELINE, LLC,**
a Pennsylvania limited liability company;
**EQUITRANS MIDSTREAM CORPORATION,**
a Pennsylvania corporation; and
**EQT CORPORATION,** a Pennsylvania corporation,

    **Defendants.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing ***Memorandum of Law in Support of Defendants' Motion to Dismiss*** was electronically filed June 6 2025, via the Court's CM/ECF system, which will send a notice of the electronic filing to the following counsel of record:

> John-Mark Atkinson, Esquire
> Natalie R. Atkinson, Esquire
> Atkinson & Frampton, PLLC
> 2306 Kanawha Boulevard East
> Charleston, WV 25311
> *Counsel for Plaintiff*

                                 */s/ Jennifer J. Hicks*
                                 Jennifer J. Hicks, Esquire (WVSB #11423)