UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
BLUEFIELD DIVISION

**MICHAEL BARNHILL,**
        Plaintiff,

v.                                                    Civil Action No. 1:25-cv-00356

**MOUNTAIN VALLEY PIPELINE, LLC,**
a Pennsylvania limited liability company;
**EQUITRANS MIDSTREAM CORPORATION,**
a Pennsylvania corporation; and
**EQT CORPORATION,** a Pennsylvania corporation,
        Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S MOTION TO REMAND AND FOR ATTORNEY FEES**

Plaintiff Michael Barnhill, by counsel, submits this memorandum of law in support of his motion to remand this action to the Circuit Court of Monroe County, West Virginia.

Defendants Mountain Valley Pipeline, LLC, Equitrans Midstream Corporation, and EQT Corporation removed this action from state to federal court on the purported basis that Plaintiff's common law retaliatory discharge claim is preempted by the Pipeline Safety Act. Not. of Removal, ECF No. 1. Removal was improper because the Pipeline Safety Act because the Pipeline Safety Act does not completely preempt state tort claims. This Court therefore lacks jurisdiction and this case should be remanded to the Circuit Court of Monroe County, West Virginia. As explained below, an award of fees is appropriate given Defendants' improvident removal.

**FACTS AND PROCEDURAL HISTORY**

I.        **Plaintiff's Complaint.**

Plaintiff was formerly employed by Defendants as a welding inspector of the Mountain Valley Pipeline project in Monroe County, West Virginia. On December 8, 2023, Defendants fired

Plaintiff for raising safety concerns related to improper welding on the pipeline. *See generally* Compl., ECF No. 1-1. Plaintiff alleges two separate incidents that resulted in his firing. First, he discovered corrosion on three separate areas of pipeline joints on November 15, 2023. *Id.* ¶ 13. He raised these concerns with his supervisor, chief welding inspector David Mitchell. Plaintiff alleges that Mr. Mitchell directed him to install the pipeline joints despite the observed corrosion. Plaintiff refused. *Id.* ¶¶ 21–23. Then, on December 5, 2023, Plaintiff learned that a weld had been performed on the pipeline without an inspector present. MVP's construction specifications require all welds to be performed in the presence of a welding inspector. Federal Pipeline and Hazardous Materials Safety Administration ("PHMSA") regulations encompass MVP's construction specifications, meaning that a deviation from the specifications brought the pipeline out of compliance with federal law. *Id.* ¶¶ 29–30. Plaintiff's supervisor confronted him and told him to amend his report to conceal the illegal weld. *Id.* ¶¶ 42–43. Plaintiff reported the illegal weld to the PHMSA Eastern Region Director on December 7, 2023. Defendants cut out the illegal weld the next day and immediately afterward terminated Plaintiff's employment. *Id.* ¶¶ 54–56.

On April 29, 2025, Plaintiff filed a single-count Complaint in the Circuit Court of Monroe County, West Virginia. The Complaint's single count alleges retaliatory discharge in violation of West Virginia public policy. This claim was first recognized by the Supreme Court of Appeals of West Virginia in *Harless v. First National Bank in Fairmont*, 246 S.E.2d 270 (W. Va. 1978).

### II.    Defendants Remove the Action from State to Federal Court.

On May 30, 2025, Defendants removed the action, invoking the Court's federal question jurisdiction. Not. of Removal, ECF No. 1 at 2 (citing 28 U.S.C. § 1331). They ask the Court to apply the complete preemption doctrine, an exception to the well-pleaded complaint rule that

2

typically allows a plaintiff to avoid federal jurisdiction by pleading exclusively state law claims.[1] Defendants contend that Plaintiff's suit is completely preempted by the Pipeline Safety Act, the enabling statute for the PHMSA, because Plaintiff relies on PHMSA regulations as the substantial public policy for his West Virginia tort claim. Defendants later filed a Motion to Dismiss Plaintiff's Complaint on the basis of preemption.

Removal was improper because Plaintiff's state law claim is not completely preempted. The Court does not have federal question jurisdiction and this action must be remanded.

## **LEGAL STANDARD**

"Federal courts . . . are courts of limited jurisdiction." *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 26 (2025) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). A civil action can be removed to federal court only if the federal court has original jurisdiction. 28 U.S.C. § 1441(a); *Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 386 (1998). "The party seeking removal bears the burden of showing removal is proper." *Prince v. Sears Holdings Corp.*, 848 F.3d 173, 176 (4th Cir. 2017); *see also Strawn v. AT & T Mobility LLC*, 530 F.3d 293, 297 (4th Cir. 2008). A federal court is duty-bound to "construe removal jurisdiction strictly." *Palisades Collections LLC v. Shorts*, 552 F.3d 327, 336 (4th Cir. 2008) (citation omitted). "If federal jurisdiction is doubtful, a remand is necessary." *Common Cause v. Lewis*, 956 F.3d 246, 252 (4th Cir. 2020) (citing *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994)).

The plaintiff is the master of his or her complaint, and a defendant may remove a suit under federal question jurisdiction only when the "well-pleaded complaint" raises a federal question.

---

[1] Defendants do not rely on diversity jurisdiction in their Notice of Removal because the parties are not completely diverse. *See* Not. of Removal at 2.

*Royal Canin*, 604 U.S. at 26. This "well-pleaded complaint" rule allows the plaintiff to avoid federal jurisdiction by pleading claims only under state law. *Id.*; *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987). "If the complaint presents no federal question, a federal court may not hear the suit." *Royal Canin*, 604 U.S. at 26; *see also* § 1441(b). Thus, "the Supreme Court unwaveringly has maintained that 'to bring a case within § 1441, a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action." *Lontz v. Tharp*, 413 F.3d 435, 439 (4th Cir. 2005) (quoting *Gully v. First Nat'l Bank*, 299 U.S. 109, 112 (1936)).

## ARGUMENT

### I. Complete Preemption Will Rarely Give a Federal Court Jurisdiction Over State Law Claims.

When invoking "complete preemption" as a basis for removal, a defendant bears the burden to prove that "a federal statute indisputably displaces any state cause of action over a given subject matter." *Lontz*, 413 F.3d at 440. A district court should approach the analysis with skepticism since "[f]ederalism concerns strongly counsel against imputing to Congress an intent to displace a whole panoply of state law . . . absent some clearly expressed direction." *Id.* (quoting *Custer v. Sweeney,* 89 F.3d 1156, 1167 (4th Cir. 1996)) (internal quotes omitted). For this reason, the Fourth Circuit has counseled that state law complaints asserting state law claims "usually must stay in state court." *Id.* (citations omitted). "The presumption, in other words, is against finding complete preemption." *Id.* (citing *Custer,* 89 F.3d at 1167).

Recognizing that complete preemption "undermines the plaintiff's traditional ability to plead under the law of his choosing," *Lontz*, 413 F.3d at 441, the Supreme Court has found that a federal statute completely preempts state law on only three occasions. *Id.* (noting Supreme Court has found complete preemption in cases arising under the National Bank Act, the Labor

4

Management Relations Act, and the Employee Retirement and Income Security Act). In the rare case where complete preemption exists, it will "transform[] the plaintiff's state-law claims into federal claims," thereby justifying removal under § 1441. *Id.* (citation omitted).

*Complete* preemption must also be distinguished from the *defense* of preemption, which Defendants raise in their pending Motion to Dismiss. Ordinary preemption is a federal defense and will not provide a basis for removal. *Lontz*, 413 F.3d at 440 (citing *Beneficial*, 539 U.S. at 6). "[E]ven an 'obvious' pre-emption defense does not, in most cases, create removal jurisdiction." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 66 (1987).

## II. The Pipeline Safety Act Does Not Completely Preempt Plaintiff's Common Law *Harless* Claim.

Defendants' assertion that Plaintiff's state law *Harless* claim is completely preempted by the Pipeline Safety Act fails for three reasons:

**First**, the text of the Pipeline Safety Act expressly states that it does not limit liability in tort.

**Second**, the Act's preemption provision is limited to state safety standards.

**Third**, judicial precedent uniformly holds that the Pipeline Safety Act does not completely preempt state law claims.

### A. The Pipeline Safety Act Expressly Preserves Tort Claims.

The stated purpose of the Pipeline Safety Act is to "provide adequate protection against risks to life and property posed by pipeline transportation and pipeline facilities" by enhancing the regulatory and enforcement authority of the Department of Transportation. 49 U.S.C. § 60102(a)(1). To achieve this purpose, Congress empowers the Secretary of Transportation to "prescribe minimum safety standards for pipeline transportation and for pipeline facilities." *Id.* § 60102(a)(2).

The clear language of the Pipeline Safety Act preserves the ability of private individuals to sue in tort. Section 60120 of the Pipeline Safety Act states that "[t]his chapter does not affect the tort liability of any person." 49 U.S.C. § 60120. Section 60121 emphasizes the point further by clarifying that the statute "does not restrict a right to relief that a person . . . may have under another law or at common law." 49 U.S.C. § 60121(d). Defendants do not acknowledge these provisions of the statute, much less explain how they could possibly be consistent with complete preemption. Indeed, by preserving the right of individuals to bring private causes of action in tort, *see id.* § 60120, it is plain that Congress did not intend to completely preempt state law in this area.

### B. The Pipeline Safety Act's Preemption Provision is Limited and Does Not Support Complete Preemption.

As Defendants point out in their Notice of Removal, the Pipeline Safety Act contains a preemption provision. The provision preserves the exclusivity of federal authority to enact safety standards for natural gas pipelines, stating:

> Preemption.—A State authority that has submitted a current certification under section 60105(a) of this title may adopt additional or more stringent safety standards for intrastate pipeline facilities and intrastate pipeline transportation only if those standards are compatible with the minimum standards prescribed under this chapter. A State authority may not adopt or continue in force safety standards for interstate pipeline facilities or interstate pipeline transportation....

49 U.S.C. § 60104(c). Section 60104(c) does no more than prevent a state authority from promulgating and enforcing its own safety standards for interstate pipeline transportation or pipeline facilities. *See id.*; *Washington Gas Light Co. v. Prince George's Cnty. Council*, 711 F.3d 412, 420 (4th Cir. 2013) ("[T]he PSA expressly preempts state and local law in the field of safety."); *Texas Midstream Gas Servs., LLC v. City of Grand Prairie*, 608 F.3d 200, 210 (5th Cir. 2010) ("The PSA expressly preempts 'safety standards' for the facilities at issue.").

6

Plaintiff's *Harless* claim does not fall within the narrow scope of the preemption provision because it does not involve West Virginia legislating in the area of pipeline safety. More importantly, Defendants make no effort to demonstrate how this limited preemption language entirely supplants state law, as would be necessary for complete preemption. To the contrary, the statutory text only prevents a State from "adopt[ing] or continu[ing] in force safety standards for interstate pipeline facilities or interstate pipeline transportation." 49 U.S.C. § 60104(c). There is simply no support for Defendants' contention that this provision demonstrates an intent by Congress to "displace[] entirely any state cause of action." *Lontz*, 413 F.3d at 440 (citation omitted).

Defendants also rely on the Pipeline Safety Act's whistleblower protection scheme to support complete preemption. *See* Not. of Removal 3 (citing 49 U.S.C. § 60129). Here, too, the statutory text does not suggest an intent to displace state law. The whistleblower complaint procedure is not mandatory, *see* 49 U.S.C. § 60129(b), and as stated above, other provisions in the Pipeline Safety Act preserve employee rights to sue outside of this administrative process. 49 U.S.C. § 60120.

### C. Courts Have Held that the Pipeline Safety Act Does Not Completely Preempt State Law.

"[C]ompletely preempted claims are rare," *Lontz*, 413 F.3d at 440, and Defendants bear the burden of establishing that the Pipeline Safety Act "indisputably displaces any state cause of action" touching on PHMSA regulations. *Id.* They fall far short of carrying this burden. Defendants fail to cite a single case where a court has found that the Pipeline Safety Act completely preempts state law. In fact, if they had performed even the most rudimentary search, they would have learned that courts have uniformly limited the preemptive reach of the Pipeline Safety Act to safety standards and **no case** supports the theory of complete preemption. *See Baldonado v. El Paso Nat.*

7

*Gas Co.*, No. CIV-08-0008 JC/LCS, 2008 WL 11322139, at *8 (D.N.M. May 7, 2008), *report and recommendation adopted*, No. CIV 08-08 JC/LCS, 2008 WL 11322212 (D.N.M. June 4, 2008) (remanding state court claim that had been improvidently removed under the Pipeline Safety Act; reasoning that "[b]ecause the New Mexico Supreme Court has not entered the field of pipeline safety, the complete preemption doctrine is inapplicable"); *Slavich v. Broadhurst*, No. CIV. A. 93-1646, 1993 WL 500800, at *4 (E.D. La. Nov. 29, 1993) (remanding case removed under Pipeline Safety Act because complete preemption did not exist and plaintiff alleged only state causes of action); *see also Washington Gas*, 711 F.3d at 422 (finding the Pipeline Safety Act does not preempt local zoning plans); *Tenneco Inc. v. Pub. Serv. Comm'n of W. Virginia*, 489 F.2d 334, 337 (4th Cir. 1973); *Pennsylvania Servs. Corp. v. Texas E. Transmission, LP*, No. 2:11-CV-01076, 2011 WL 13234909, at *1 (W.D. Pa. Oct. 12, 2011) (noting that the Pipeline Safety Act "does not supplant state real property law"); *Am. Energy Corp. v. Texas E. Transmission, LP*, 701 F. Supp. 2d 921, 931 (S.D. Ohio 2010) (denying motion to dismiss state tort claim on preemption grounds because "[t]he [Pipeline Safety Act] does not preempt Ohio property or tort law").

In sum, Defendants have not shown that the preemptive force of the Pipeline Safety Act is so extraordinary that it "converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Metro. Life Ins. Co.*, 481 U.S. at 65. Plaintiff's claim rests exclusively on state law and this Court lacks jurisdiction under § 1441.

### III. Plaintiff is Entitled to Fees.

Federal law provides that a remand order "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). The Supreme Court has interpreted this statute to mean that fees are appropriate "where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Cap. Corp.*,

546 U.S. 132, 141 (2005). It has been the practice of this Court to award fees where a defendant has no legitimate basis for removal, including when the defendant ignores relevant case law. *See Carter v. Acadia Healthcare Co., Inc.*, 705 F. Supp. 3d 597, 603 (S.D.W. Va. 2023) ("Given the total dearth of relevant case law supporting its arguments for removal, this Court cannot find any objectively reasonable basis for removal[.]"); *Watson v. Charleston Hous. Auth.*, 83 F. Supp. 2d 709, 712 (S.D.W. Va. 2000) (awarding fees following remand); *Gibson v. Tinkey*, 822 F. Supp. 347, 349 (S.D.W. Va. 1993) (granting request for fees where "the basis for the petition for removal was contrary to well-settled authority").

Here, Defendants lacked an objectively reasonable basis for removal. Plaintiff alleges a single cause of action arising under West Virginia common law. Federal jurisdiction simply does not arise from the face of Plaintiff's Complaint. Though they carried a heavy burden to establish complete preemption, Defendants made no attempt to address the contrary statutory text or the many cases which conclude that the Pipeline Safety Act does not supplant state law. Ultimately, Defendants' removal was unreasonable, unwarranted, and a waste of resources. *See Carter*, 705 F. Supp. 3d at 603–04 (granting request for fees where the defendant's improper removal had the effect of "delay[ing] litigation, run[ning] up costs . . . and wast[ing] everyone's time, the Court's included") (citation omitted). Fees are appropriate in this circumstance.

## IV.   CONCLUSION

Defendants have failed to demonstrate that the Pipeline Safety Act completely preempts Plaintiff's *Harless* claim, and the Court therefore lacks jurisdiction. Plaintiff respectfully requests that the Court remand this action and grant his request for fees.

9

**MICHAEL BARNHILL,**

By counsel:

/s/ Natalie Atkinson
Natalie Atkinson (WVSB # 12030)
John-Mark Atkinson (WVSB #12014)
Atkinson & Frampton, PLLC
2306 Kanawha Blvd. East
Charleston WV 25311
natkinson@amplaw.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
BLUEFIELD DIVISION

**MICHAEL BARNHILL,**
       **Plaintiff,**

v.                                           Civil Action No. 1:25-cv-00356

**MOUNTAIN VALLEY PIPELINE, LLC,**
A Pennsylvania limited liability company;
**EQUITRANS MIDSTREAM CORPORATION,**
a Pennsylvania corporation; and
**EQT CORPORATION,** a Pennsylvania corporation,
       **Defendants.**

## CERTIFICATE OF SERVICE

I, Natalie Atkinson, counsel for Plaintiff, do hereby certify that service of "MEMORANDUM OF LAW IN SUPPORT OF MOTION TO REMAND AND FOR ATTORNEY FEES" was made upon the parties listed below by electronic filing pursuant to the Court's CM/ECF system, which will send notice of the filing to the following counsel:

Jennifer J. Hicks, Esquire
Timothy M. Miller, Esquire
Babst, Calland, Clements & Zomnir, P.C.
300 Summers Street, Suite 1000
Charleston, WV 25301
*Counsel for Defendants*

on this 22nd day of June, 2025.

    <u>/s/ Natalie Atkinson</u>
    Natalie Atkinson (WVSB #12030)

11