UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
BLUEFIELD DIVISION

**MICHAEL BARNHILL,**
      **Plaintiff,**

v.                                            Civil Action No. 1:25-cv-00356

**MOUNTAIN VALLEY PIPELINE, LLC,**
A Pennsylvania limited liability company;
**EQUITRANS MIDSTREAM CORPORATION,**
a Pennsylvania corporation; and
**EQT CORPORATION,** a Pennsylvania corporation,
      **Defendants.**

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

      Plaintiff Michael Barnhill, by counsel, responds in opposition to the Motion to Dismiss filed by Mountain Valley Pipeline, LLC, the Midstream Company LLC (f/k/a Equitrans Midstream Corporation), and EQT Corporation (collectively "Defendants"). ECF Nos. 5, 6. Defendants' motion is based on their claim of preemption under the Pipeline Safety Act, the enabling statute for the Pipeline and Hazardous Materials Safety Administration ("PHMSA"). Defendants also argued that the Pipeline Safety Act completely preempts this action as grounds for removing this action from state to federal court. *See* Not. of Removal, ECF No. 1.

      Removal was improper because the Pipeline Safety Act does not completely preempt state law. As set forth in Plaintiff's Motion to Remand filed this day, ECF Nos. 9, 10, the Court lacks jurisdiction and this case should be remanded to the Circuit Court of Monroe County. The Court need not reach the substance of Defendants' Motion to Dismiss.

      If the Court retains jurisdiction over this matter, Defendants' Motion to Dismiss should be denied. Preemption does not bar Plaintiff's claim. Further, the PHMSA regulations upon which

Plaintiff bases his claim establish a substantial public policy for purposes of West Virginia law. These regulations serve to protect the public from catastrophic accidents posed by interstate natural gas pipelines that are not built according to federal safety standards.

## PLAINTIFF'S COMPLAINT AND PROCEDURAL HISTORY

Plaintiff worked as a welding inspector of the Mountain Valley Pipeline project in Monroe County, West Virginia until he was terminated for raising safety concerns on December 8, 2023. *See generally* Compl., ECF No. 1-1. Plaintiff alleges two separate incidents that resulted in his firing. First, he discovered corrosion on three separate areas of pipeline joints on November 15, 2023. *Id.* ¶ 13. He raised these concerns with his supervisor, chief welding inspector David Mitchell. Plaintiff alleges that Mr. Mitchell directed him to install the pipeline joints despite the observed corrosion. Plaintiff refused. *Id.* ¶¶ 21–23. Then, on December 5, 2023, Plaintiff learned that a weld had been performed on the pipeline without an inspector present. While initially agreeing that the weld needed to be cut out and redone, Plaintiff's supervisor later confronted him and told him to amend his report to conceal the illegal weld. *Id.* ¶¶ 42–43. Plaintiff reported the illegal weld to the PHMSA Eastern Region Director on December 7, 2023. Defendants cut out the illegal weld the next day and immediately thereafter terminated Plaintiff's employment. *Id.* ¶¶ 54–56.

On April 29, 2025, Plaintiff filed a single-count Complaint for retaliatory discharge in the Circuit Court of Monroe County, West Virginia. After being served on May 1, 2025, Defendants removed the action to this Court on May 30, 2025. On June 6, 2025, Defendants filed the pending Motion to Dismiss on preemption grounds. They also argue that West Virginia does not recognize PHMSA regulations as the source of substantial public policy.

**LEGAL STANDARD**

A motion to dismiss for failure to state a claim upon which relief can be granted tests the legal sufficiency of a complaint. Fed. R. Civ. P. 12(b)(6). "[I]t does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). Defendants' motion to dismiss must be evaluated under the pleading standard set forth in Rule 8(a)(2) of the Federal Rules of Civil Procedure and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Rule 8(a)(2) requires only that the claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). These allegations "must be simple, concise, and direct" and "[n]o technical form is required." Fed. R. Civ. P. 8(d)(1).

**ARGUMENT**

I.  **West Virginia's *Harless* Exception to At-Will Doctrine Provides Plaintiff a Means of Redress.**

In *Harless v. First National Bank in Fairmont*, 246 S.E.2d, 270, 275 (W. Va. 1978), the Supreme Court of Appeals of West Virginia announced a critical exception to the traditional rule that employers have unfettered discretion to terminate at-will employees. In recognizing this exception, the Court stated:

> We conceive that the rule giving the employer the absolute right to discharge an at will employee must be tempered by the further principle that where the employer's motivation for the discharge contravenes some substantial public policy principle, then the employer may be liable to the employee for damages occasioned by the discharge.

3

*Id.* at 275. The retaliatory discharge cause of action is one sounding in tort. *Id.* at 275 n.5. In determining whether a "substantial public policy principle exists," courts "look to established precepts in [the] constitution, legislative enactments, legislatively approved regulations, and judicial opinions." *Tudor v. Charleston Area Med. Ctr., Inc.*, 506 S.E.2d 554, 565 (W. Va. 1997). Both federal and state law can serve as the source of public policy for a *Harless* claim. *See, e.g.*, *Herbert J. Thomas Mem. Hosp. Assoc. v. Nutter*, 795 S.E.2d 530, 541 (W. Va. 2016) (a plaintiff states a claim for retaliatory discharge by identifying a "clear public policy . . . in a state or federal constitution, statute or administrative regulation, or in the common law").

## II.      Plaintiff's *Harless* Action is Not Preempted by the Pipeline Safety Act.

Defendants argue that the Pipeline Safety Act preempts Plaintiff's claim for retaliatory discharge under West Virginia law. The argument ignores the plain text of the statute, which exempts state tort claims from the Pipeline Safety Act's preemptive reach. 49 U.S.C. § 60120. Even without consideration of § 60120, Defendants fail to identify any preemptive intent by Congress with regard to state tort claims.

"[T]he purpose of Congress is the ultimate touchstone in every pre-emption case." *Wyeth v. Levine,* 555 U.S. 555, 564 (2009). Preemption occurs in one of three circumstances:

> First, a federal law preempts state law when Congress expressly declares its intention that state law be preempted. Second, a federal law impliedly preempts state law when Congress has occupied the field by "regulating so pervasively that there is no room left for the states to supplement federal law." Third, federal law preempts state law when the federal and state laws actually conflict.

*Washington Gas Light Co. v. Prince George's Cnty. Council*, 711 F.3d 412, 419–20 (4th Cir. 2013) (citing *Epps,* 675 F.3d at 322).

4

### A. Congress Expressly Preserved State Tort Claims in the Pipeline Safety Act.

The Pipeline Safety Act was enacted to "provide adequate protection against risks to life and property posed by pipeline transportation and pipeline facilities" by enhancing the regulatory and enforcement authority of the Department of Transportation. 49 U.S.C. § 60102(a)(1). To achieve this purpose, Congress empowers the Secretary of Transportation to "prescribe minimum safety standards for pipeline transportation and for pipeline facilities." *Id.* § 60102(a)(2).

Preemption of state tort claims under the Pipeline Safety Act is inappropriate as a matter of statutory text. The Pipeline Safety Act states: "This chapter does not affect the tort liability of any person." 49 U.S.C. § 60120. If this were not plain enough, § 60121 creates a private right of action for violations of the statute's safety provisions and adds that the statute "does not restrict a right to relief that a person . . . may have under another law or at common law." 49 U.S.C. § 60121(d); *see Pennsylvania Servs. Corp. v. Texas E. Transmission, LP*, No. 2:11-CV-01076, 2011 WL 13234909, at *1 (W.D. Pa. Oct. 12, 2011) (noting that the Pipeline Safety Act "does not supplant state real property law"); *Am. Energy Corp. v. Texas E. Transmission, LP*, 701 F. Supp. 2d 921, 931 (S.D. Ohio 2010) (denying motion to dismiss state tort claim on preemption grounds because "[t]he [Pipeline Safety Act] does not preempt Ohio property or tort law").

The savings clause in § 60120(c) is clear evidence of Congressional intent *not* to preempt state tort claims, even if stemming from conduct related to natural gas pipelines. A retaliatory discharge claim is a common law tort in West Virginia. *Harless*, 246 S.E.2d at 275. The plain text of the statute defeats Defendants' preemption argument.

## B. Even Without Consideration of the Savings Clause, Preemption Does Not Apply to Plaintiff's State Law Retaliatory Discharge Claim.

As explained above, the Pipeline Safety Act expressly preserves state tort claims in § 60120. But even if the Court considers Defendants' preemption arguments, there is no evidence of Congressional intent to preempt state law tort claims in the Pipeline Safety Act.

### i. Federal Courts Apply a Presumption Against Preemption of State Tort Law.

Preemption analysis starts with a presumption against preemption of traditional state employment claims. *See Ventress v. Japan Airlines*, 603 F.3d 676, 682 (9th Cir. 2010) (reasoning that preemption analysis in an employment case starts with the "presumption that 'because the States are independent sovereigns in our federal system, . . . Congress does not cavalierly preempt state law causes of action'") (citing *Medtronic, Inc. v. Lohr*, 518 U.S.C. 470, 485 (1996)); *Glynn v. EDO Corp.*, 536 F. Supp.2d 595, 609 (D. Md. 2008). "When federal law regulates an area 'traditionally occupied' by the states, which includes employment law, there must be a 'clear and manifest' Congressional intent to preempt." *Glynn*, 536 F. Supp. 2d at 609 (citing *Rice v. Santa Fe Elevator Corp.*, 331 US. 218, 230 (1947)); *see also Virginia Uranium, Inc. v. Warren*, 848 F.3d 590, 596 (4th Cir. 2017) (federal courts will not interfere with powers traditionally reserved for states in the absence of a "clear and manifest purpose" by Congress). The Court should therefore view Defendants' preemption arguments with skepticism.

### ii. Express Preemption Does Not Apply Because the Narrow Preemption Provision in the Pipeline Safety Act Does Not Reach Tort Claims.

While Defendants correctly observe that the Pipeline Safety Act includes an express preemption provision, the provision does not preclude Plaintiff's *Harless* claim. This is because it is narrowly drawn to apply only where the States regulate in the area of pipeline safety standards.

The Pipeline Safety Act's preemption provision states:

6

> Preemption.—A State authority that has submitted a current certification under section 60105(a) of this title may adopt additional or more stringent safety standards for intrastate pipeline facilities and intrastate pipeline transportation only if those standards are compatible with the minimum standards prescribed under this chapter. A State authority may not adopt or continue in force safety standards for interstate pipeline facilities or interstate pipeline transportation....

49 U.S.C. § 60104(c). This provision prevents a State authority from promulgating and enforcing its own safety standards for interstate pipeline transportation or pipeline facilities. *See id.*; *Washington Gas*, 711 F.3d at 420 ("[T]he PSA expressly preempts state and local law in the field of safety."); *Texas Midstream Gas Servs., LLC v. City of Grand Prairie*, 608 F.3d 200, 210 (5th Cir. 2010) ("The PSA expressly preempts 'safety standards' for the facilities at issue.").

Plaintiff's common law retaliatory discharge claim is not a safety standard; further, the claim has nothing to do with a state regulating in the field of pipeline safety. *See Washington Gas*, 711 F.3d 420–21 (reasoning that local zoning plans were not "safety regulations" and not expressly preempted by the PSA); *Texas Midstream*, 608 F.3d at 211 ("[T]he PSA itself only preempts *safety* standards.) (emphasis in original). Plaintiff's claim protects employees from termination for reasons that would contravene West Virginia public policy. Accordingly, the claim does not come within the express preemption provision of the PSA.

   iii.   **Plaintiff's Claim Does Not Implicate Field or Conflict Preemption.**

Field preemption (also known as implied preemption) and conflict preemption likewise do not apply.[1] Because Congress has expressly identified the preempted area in the Pipeline Safety Act, there is no need to consider whether other state laws are impliedly preempted. *See Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 517 (1992) ("Congress' enactment of a provision defining the

---

[1] Defendants do not clearly identify which of the three types of preemption serves as the basis for their motion to dismiss, though they appear to invoke both express and field preemption. *See* Defs.' Mem. in Supp. Mtn. to Dismiss 5–6.

7

pre-emptive reach of a statute implies that matters beyond that reach are not pre-empted."); *Washington Gas*, 711 F.3d at 422 (noting that where state laws are unrelated to safety standards and therefore "beyond the scope of the PSA's express preemption provision, it is unlikely that they are impliedly preempted"); *Texas Midstream*, 608 F.3d at 210 (reasoning in a PSA case that where "Congress has expressly identified the preempted area, . . . we will not ask if others are implicitly covered"). Further, because the PSA contains a savings clause preserving state tort claims, there is no reason to believe that Congress intended to preempt state tort claims tangentially related to pipeline safety. *See, e.g.*, *English v. Gen. Elec. Co.*, 496 U.S. 72, 80 (1990) (finding that Congress did not preempt employee's emotional distress claim arising from reporting safety violations at her workplace).

Conflict preemption likewise does not apply. "A court should not find conflict preemption unless preemption was 'the clear and manifest purpose of Congress.'" *N. Virginia Hemp & Agric., LLC v. Virginia*, 125 F.4th 472, 493 (4th Cir. 2025) (quoting *Arizona v. United States*, 567 U.S. 387, 400 (2012)). Stated differently, "courts should not seek out conflicts where none clearly exist." *Id.* (citation omitted). In *English*, the Supreme Court considered whether an employee's state tort claim conflicted with the anti-retaliation provision of the Energy Reorganization Act. 496 U.S. at 87. The anti-retaliation provision provided whistleblowers with a federal remedy to challenge a discriminatory discharge. *Id.* After reviewing the text of the statute, *English* observed that "[o]n its face, th[is] section does no more than grant a federal administrative remedy to employees in one industry against one type of employer retaliation—retaliation for whistle-blowing." *Id.* "Ordinarily," the Court reasoned, "the mere existence of a federal regulatory or enforcement scheme, even one as detailed as [the anti-retaliation provision], does not by itself imply pre-emption of state remedies." *Id.* Instead, the Court considered whether there were

8

"special features" of the federal whistleblower statute that warranted preemption of state tort law. *Id.* (citing *Hillsborough Cty. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 719 (1985)). The Court ultimately concluded that the plaintiff's state tort claim did not serve as an obstacle to the accomplishment of federal law and was not preempted. *Id.* at 87–90.

Defendants have not identified any way in which a state law claim for retaliatory discharge conflicts with the federal scheme in the Pipeline Safety Act, and the Supreme Court emphasized in *English* that "pre-emption is ordinarily not to be implied absent an 'actual conflict.'" Allowing Plaintiff's *Harless* claim to proceed will further, rather than frustrate, the purposes of the Pipeline Safety Act. The anti-retaliation provision in the Pipeline Safety Act encourages employees to report safety violations. *See* 49 U.S.C. § 60129 (providing that no employer may discharge or discriminate against an employee for reporting violations of federal law relating to pipeline safety). Plaintiff's *Harless* claim, which alleges retaliation in response to reporting his employer's deviation from federal safety standards, supports the PSA's safety goals. The claim encourages employees to report safety violations, penalizes employers for engaging in retaliatory conduct, and ultimately promotes public safety. The Court should decline to seek out a conflict where none clearly exists—particularly where, as here, Defendants have not identified one. The Court should hold that Plaintiff's *Harless* claim does not conflict with federal pipeline safety law.

      iv.    **The Pipeline Safety Act's Anti-Retaliation Provision Does Not Imply Preemption of State Tort Claims.**

Defendants argue that the "comprehensive nature" of the whistleblower protection scheme in the Pipeline Safety Act suggests that Congress intended the scheme to preempt retaliation claims arising under state law. Their argument finds no support in the text of the statute or in case law. The PSA's anti-retaliation provision protects pipeline safety whistleblowers, stating in part:

    **Discrimination against employee.**--

9

> **(1) In general.**--No employer may discharge any employee or otherwise discriminate against any current or former employee with respect to his compensation, terms, conditions, or privileges of employment because the employee (or any person acting pursuant to a request of the employee)--
>
> **(A)** provided, caused to be provided, or is about to provide or cause to be provided, to the employer or the Federal Government information relating to any violation or alleged violation of any order, regulation, or standard under this chapter or any other Federal law relating to pipeline safety[.]

49 U.S.C. § 60129. If an employee believes that he or she has been discharged in violation of the PSA, the employee "may, not later than 180 days after the date on which such violation occurs, file . . . a complaint with the Secretary of Labor alleging such discharge or discrimination." *Id.* Filing a whistleblower complaint is discretionary and there is nothing in § 60129 to suggest an intent to preempt other civil remedies available to whistleblowers. *See id.* Indeed, as stated earlier, the statute says elsewhere that it does not limit the tort liability of employers. 49 U.S.C. § 60120(c).

Further, Defendants' argument is inconsistent with the Supreme Court's holding in *English*. *English* addressed the question of preemption in a safety statute with similarly comprehensive whistleblower protections. The Court found that the statute did not conflict with or preempt state tort law. 496 U.S. at 87 (reasoning that "the mere existence of a federal regulatory or enforcement scheme, even one as detailed as [the Energy Reorganization Act], does not by itself imply pre-emption of state remedies").

Defendants also argue that the Court should find preemption based on similarities between the Pipeline Safety Act and the Federal Railroad Safety Act, which contains its own whistleblower protections. They rely on *Rayner v. Smirl*, 873 F.2d 60 (4th Cir. 1989). In *Rayner*, the Fourth Circuit relied on a prior version of the Federal Railroad Safety Act to hold that its whistleblower protections preempted a state law retaliatory discharge claim. *Id.* at 65–66. *Rayner*'s reasoning is unpersuasive for three reasons. First, *Rayner* addressed an earlier version of the Federal Railroad

10

Safety Act. The statute was amended in 2008 to include a savings clause exempting state tort claims from the statute's preemptive reach. *See id.* at 65–66; *see also* 49 U.S.C. § 20109(g). Second, *Rayner* was decided before the Supreme Court's decision in *English*. Third, the Pipeline Safety Act (like the contemporary version of the Railroad Safety Act) includes a carveout for tort claims. 49 U.S.C. § 60120. For these three reasons, *Rayner* does not support Defendants' position.

### III. Administrative Exhaustion does not Apply.

Defendants argue that as a result of federal preemption, Plaintiff "cannot bring his [retaliatory discharge] claim straight to court" but "must" follow the administrative grievance procedure outlined in § 60129 of the Pipeline Safety Act. *See* Defs.' Mem. in Supp. Mtn. to Dismiss 9. Again, their argument ignores the plain language of the statute.

The Pipeline Safety Act's complaint procedure is not mandatory for whistleblowers. Rather, § 60129 states that an employee who has been discharged or discriminated against in violation of the Pipeline Safety Act "***may*** . . . file (or have any person file on his or her behalf) a complaint with the Secretary of Labor alleging such discharge or discrimination." 49 U.S.C. § 60129 (emphasis added). The statute plainly makes this procedure discretionary, and the Act expressly preserves the right of private persons to bring tort claims arising from conduct that relates to pipeline safety standards. There is simply no indication from the statutory text that the whistleblower complaint procedure is mandatory, as Defendants claim. Here, too, Defendants fail to cite a single case supporting the argument that a whistleblower must follow the statutory complaint procedure before instituting a cause of action in federal or state court. The Court should reject their contention that Plaintiff's claim is subject to dismissal because he did not meet so-called "procedural prerequisites." *See* Defs.' Mem. in Supp. Mtn. to Dismiss 9.

### IV. The Administrative Grievance Procedure Available to Whistleblowers in the Pipeline Safety Act Does Not Supplant a *Harless* Claim for Retaliatory Discharge.

Next, Defendants argue that Plaintiff cannot pursue a *Harless* claim under West Virginia law because the Pipeline Safety Act provides an adequate statutory remedy. Defs.' Mem. in Supp. Mtn. to Dismiss 11–13. This argument is premised in West Virginia law, not the text of the Pipeline Safety Act. The case law on which they rely does not apply here.

"The proposition for which *Harless* stands is clear: When an employee is discharged in contravention of a substantial public policy, but no cause of action is provided under that policy, courts may infer a cause of action." *Jackson v. Vaughn*, No. 1:15CV128, 2015 WL 6394510, at *3 (N.D.W. Va. Oct. 22, 2015). Conversely, "[w]hen a statutory scheme provides *a private cause of action* to ensure compliance with its underlying public policy objectives, that statutory cause of action cannot be displaced by a *Harless* style common law tort action." *Id.* (emphasis added) (citations omitted); *see also Griffith v. Chemours Co.*, No. 2:21-CV-00368, 2021 WL 4303391, at *3 (S.D.W. Va. Sept. 21, 2021) (noting that "[a] *Harless* claim . . . exists where the statutory remedy is inadequate . . . or where there is no other private cause of action to enforce the public policy at issue"). The quintessential example under West Virginia law occurs where a plaintiff brings a *Harless* claim to redress discriminatory conduct covered under the West Virginia Human Rights Act. *See Edmonds v. Altice Techn. Servs. US LLC*, 413 F. Supp. 3d 488, 493 (S.D. W. Va. 2019); *Guevara v. K-Mart Corp.*, 629 F. Supp. 1189, 1192 (S.D. W. Va. 1986).

The Pipeline Safety Act does not supplant Plaintiff's common law retaliatory discharge claim because it does not provide a private right of action. Instead, its enforcement mechanism is administrative in nature. Section 60129(b) provides that a whistleblower "may" lodge a complaint with the Secretary of Labor after facing discrimination for engaging in whistleblowing activity related to pipeline safety. The statute does not make pursuit of the administrative grievance

procedure mandatory; nor does it allow a whistleblower to initiate a private cause of action in federal or state court. *See* 49 U.S.C. § 60129(b)(3)(D) (permitting an employee to bring an original cause of action in United States district courts only if the Secretary of Labor does not issue a final decision within 210 days).

The administrative process in the Pipeline Safety Act distinguishes this case from *Guevara* and *Wiley*, both cited in Defendants' brief. Unlike the Pipeline Safety Act, the West Virginia Human Rights Act provides a private right of action to employees who have suffered discriminatory treatment in the workplace. *See* W. Va. Code § 16B-17-13; *see Guevara*, 629 F. Supp. at 1192 (reasoning that the plaintiff cannot bring a *Harless* retaliatory discharge claim where the complained-of employer conduct falls under the West Virginia Human Rights Act). This Court's decision in *Wiley v. Asplundh Tree Expert Company* is distinguishable for the same reason. 4 Supp. 3d 840 (S.D. W Va. 2014). *Wiley* held that the plaintiff could not bring a *Harless* claim based on the public policy in the Fair Labor Standards Act ("FLSA") because the FLSA adequately provided a means of redress. *Id.* at 850. Importantly, the FLSA allows an employee to maintain a cause of action against his or her employer "in any Federal or State court of competent jurisdiction". 29 U.S.C. § 216(b). The Pipeline Safety Act does not.

This case is more like *Wiggins v. Eastern Associated Coal Corp.*, where the Supreme Court of Appeals of West Virginia held that a common law retaliatory discharge action was available to a miner whose only alternative means of redress was the administrative process provided under safety statutes. 357 S.E.2d 745, 748 (W. Va. 1987). *Wiggins* acknowledged the difference between a statute meant "to ensure the reporting of safety violations" and a cause of action to preserve the "vindication of private interests." *Id.* (citing *Marshall v. Intermountain Elec. Co.*, 614 F.2d 260 (10th Cir. 1980)). The Court emphasized that victims of discrimination must have access to the

courts to receive full compensation for violations of their legal rights. *Id.* (citing *State Human Rights Comm. v. Pearlman Realty Agency*, 239 S.E.2d 145, 148 (W. Va. 1977)) (reasoning that "victims of unlawful discrimination have access to our courts when the main object of their complaint is to recover damages").

Because the Pipeline Safety Act does not provide a private right of action, is primarily concerned with preserving public safety rather than vindicating private rights, and does not give employees access to the full remedies available under a West Virginia common law claim, Plaintiff's *Harless* action survives Defendants' motion to dismiss.

### V. This Court Can Recognize PHMSA Regulations as Providing a Substantial Source of Public Policy for Plaintiff's *Harless* Claim.

Defendants' final argument in support of dismissal is two-fold: first, they contend that Plaintiff's Complaint is insufficiently specific when it cites PHMSA regulations as the source of substantial public policy, and second, that the *Harless* claim must be dismissed because no court has recognized federal pipeline safety regulations as a source of substantial public policy. *See* Defs.' Mem. in Supp. Mtn. to Dismiss 15. Neither argument supports dismissal of Plaintiff's Complaint.

The first element of a *Harless* action looks to "whether clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in common law." *Wiley v. Asplundh Tree Expert Co.*, 4 F. Supp. 3d 840, 844 (S.D.W. Va. 2014) (identifying this element as the "clarify element") (citing *Feliciano v. 7–Eleven, Inc.,* 559 S.E.2d 713, 723 (W. Va. 2001)). The public policy must be sufficiently specific to provide fair notice to the employer. *Birthisel v. Tri-Cities Health Servs. Corp.*, 424 S.E.2d 606, 612 (W. Va. 1992). On this point, *Birthisel* noted that an employer is bound "to know the fundamental public policies of the state and nation as expressed in their constitutions and statutes." *Id.* (citation omitted). It is only

14

necessary for the public policy to provide notice to a reasonable person before liability can attach. *Id.*

Under *Birthisel*, to determine whether Plaintiff has sufficiently alleged a specific and substantial public policy, the Court need only consider whether a company providing midstream services in the natural gas industry can reasonably be expected to be familiar with PHMSA regulations. The answer is certainly "yes." Further, Plaintiff's Complaint specifically identifies the safety lapses that were out of compliance with federal regulation: the welding of corroded pipeline joints and pipeline welding without the presence of a welding inspector. Compl. ¶¶ 13–14, 29–30. There should also be no question that PHMSA regulations provide a substantial public policy by protecting the public from the safety risks posed by interstate pipeline transportation of natural gas. *See* 49 U.S.C. § 60102.

Courts in West Virginia recognize violations of public policy where an employee has been terminated for refusing to engage in conduct that violates safety regulations. *See Lilly v. Overnight Transp. Co.*, 425 S.E.2d 214, 217 (W. Va. 1992) (finding *Harless* cause of action existed where employee was discharged for refusing to operate a vehicle with unsafe brakes); *Collins v. Elkay Mining Co.*, 371 S.E.2d 46, 47 (W. Va. 1988) (recognizing right of action in favor of miner who refused to falsify safety reports concerning a safety inspection, in violation of the West Virginia Mine Safety Act); *Wiggins*, 357 S.E.2d at 748 (recognizing a viable cause of action for mining employee who was disciplined for shutting down a malfunctioning machine and then discharged for refusing to operate the machine until fixed).

In *Lilly*, the West Virginia Supreme Court emphasized that where an employer's conduct creates a "substantial danger" to the public, an employee's retaliatory discharge for refusing to go along with the employer's conduct "would certainly thwart a substantial public policy." 425 S.E.2d

at 217. *Lilly*'s reasoning applies here. Plaintiff alleges that he was discharged for reporting his employer's deviation from safety standards in the construction of an interstate gas pipeline. In these circumstances, the public policy set forth in PHMSA regulations easily satisfies the *Harless* clarity element.

The Court should similarly reject Defendants' argument that a federal court sitting in West Virginia cannot recognize a source of public policy for purposes of *Harless*. *See, e.g.*, *Collins v. Lowe's Home Centers, LLC*, No. CV 3:17-1902, 2017 WL 6061980, at *4 (S.D.W. Va. Dec. 7, 2017) ("On this issue, as with the issue discussed in the section above, district courts in West Virginia have spoken. Both courts in this District, as well as those in our sister district to the north, have found that that federal statutory law can embody public policy for a *Harless* claim.").[2] In *Collins*, this Court upheld a *Harless* claim based on the substantial public policy found in the Family and Medical Leave Act. It did so after noting that the West Virginia Supreme Court of Appeals has "approvingly cited to cases where other courts have found public policy in federal statutes and regulations to support state claims, even going so far as to assert that these courts used 'similar approaches' to that of West Virginia." *Id.* at *5 (citing cases).

The question is not whether a federal district court sitting in West Virginia can recognize a *Harless* claim based on federal law—quite plainly, it can—but whether the federal law sufficiently states the public policy to support the state claim. The PHMSA's pipeline safety regulations

---

[2] On this point, this Court cited *Bartos v. PDC Energy, Inc.*, 275 F. Supp. 3d. 755 (N.D. W. Va. 2017); *Vandevander v. Verizon Wireless, Inc.*, 149 F.Supp.3d 724, 729–31 (S.D. W. Va. 2016); *Brown v. Tethys Bioscience, Inc.*, No. 1:10-1245, 2013 WL 65456, at *10 (S.D.W. Va. Jan. 4, 2013) (Faber, S.J.); *Walker v. West Publ'g Corp.*, No. 5:09-cv-723, 2011 WL 3607960, at *8-9 (S.D.W. Va. Aug. 12, 2011) (Burger, J.); and *Williams v. Basic Contracting Servs., Inc.*, No. 5:09-cv-49, 2010 WL 3244888, at *9-10 (S.D.W. Va. Aug. 17, 2010) (Johnston, J.), all of which hold that a plaintiff may maintain a West Virginia retaliatory discharge claim premised on public policy found in federal law. *Collins*, 2017 WL 6061980, at *4.

provide clear guidance for employers in the natural gas industry to follow Accordingly, the PHMSA regulations are a proper source of public policy for a West Virginia retaliatory discharge claim.

To the extent this Court questions whether PHMSA regulations provide a substantial source of public policy for a common law retaliatory discharge claim, Plaintiff asks the Court to certify the question to the West Virginia Supreme Court of Appeals.

## VI. CONCLUSION

For the reasons set forth in Plaintiff's Motion to Remand, the Court lacks subject-matter jurisdiction and need not reach the merits of Defendants' Motion to Dismiss. If the Court reaches the merits, the Motion to Dismiss should be denied. Plaintiff's Complaint states a *Harless* claim under West Virginia state law and is not preempted by the Pipeline Safety Act.

**MICHAEL BARNHILL,**

By counsel:

<u>/s/ Natalie Atkinson</u>
Natalie Atkinson (WVSB #12030)
Atkinson & Frampton, PLLC
2306 Kanawha Blvd. East
Charleston WV 25311
natkinson@amplaw.com

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF WEST VIRGINIA**
**BLUEFIELD DIVISION**

**MICHAEL BARNHILL,**
      **Plaintiff,**

v.    Civil Action No. 1:25-cv-00356

**MOUNTAIN VALLEY PIPELINE, LLC,**
A Pennsylvania limited liability company;
**EQUITRANS MIDSTREAM CORPORATION,**
a Pennsylvania corporation; and
**EQT CORPORATION,** a Pennsylvania corporation,
      **Defendants.**

## CERTIFICATE OF SERVICE

I, Natalie Atkinson, counsel for Plaintiff, do hereby certify that service of "PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS" was made upon the parties listed below by electronic filing pursuant to the Court's CM/ECF system, which will send notice of the filing to the following counsel:

Jennifer J. Hicks, Esquire
Timothy M. Miller, Esquire
Babst, Calland, Clements & Zomnir, P.C.
300 Summers Street, Suite 1000
Charleston, WV 25301
*Counsel for Defendants*

on this 22nd day of June, 2025.

    /s/ Natalie Atkinson
    Natalie Atkinson (WVSB #12030)