IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BLUEFIELD DIVISION

**MICHAEL BARNHILL,**

    **Plaintiff,**

**v.**

                                                                          **Civil Action No. 1:25-cv-00356**

**MOUNTAIN VALLEY PIPELINE, LLC,**
a Pennsylvania limited liability company;
**EQUITRANS MIDSTREAM CORPORATION,**
a Pennsylvania corporation; and
**EQT CORPORATION, a Pennsylvania corporation,**

    **Defendants.**

**DEFENDANTS' REPLY MEMORANDUM IN FURTHER
SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

The anti-retaliation of the provision of the Pipeline Safety Act makes it unlawful for a pipeline owner, or the contractor or subcontractor of a pipeline owner, to discharge an employee or otherwise discriminate against an employee because he has "provided, caused to be provided, or is about to provide or cause to be provided, to the employer or the Federal Government information relating to any violation or alleged violation of any order, regulation, or standard under this chapter or any other Federal law relating to pipeline safety" or "refused to engage in any practice made unlawful by this chapter or any other Federal law relating to pipeline safety, if the employee has identified the alleged illegality to the employer." 49 U.S.C. § 60129(a)(1)–(2). Plaintiff alleges he was a pipeline employee. *See* Compl. ¶¶ 6, 11. He alleges he reported certain safety violations to Defendants and to the Federal Pipeline and Hazardous Materials Safety

Administration ("PHMSA").[1] *See id.* ¶¶ 15, 17, 32 49.  He further alleges he refused to engage in certain activities he believed would have violated the PHMSA regulations. *See id.* ¶¶ 23, 34.  He alleges he was then terminated for these actions. *See id.* ¶ 56.

While Defendants contend Plaintiff's allegations are false, Plaintiff's Complaint articulates the exact harm Congress contemplated when it enacted the extensive and comprehensive anti-retaliation protections contained in the Federal Pipeline Safety Act. *See* 49 U.S.C. 60129. Recognizing that Plaintiff's wrongful discharge claim arises under Federal law, Defendants removed this action to the United States District Court for the Southern District of West Virginia. *See* ECF Dkt. 1. Defendants then timely moved to dismiss the action, in part, on the basis that Plaintiff's claim is preempted by the Pipeline Safety Act's anti-retaliation provision, which provides the exclusive remedy for the harm Plaintiff alleges.[2] *See* ECF Dkt. 6 pp. 4–10.  As an independent and additional ground for dismissal, Defendants argue Plaintiff's wrongful discharge claim must be dismissed for failure to state a claim under West Virginia law. *See id.* pp. 10–17.

Plaintiff Michael Barnhill failed to timely respond to Defendants' Motion to Dismiss and, therefore, waived all arguments against dismissal. In any event, the arguments raised in Plaintiff's untimely Response in Opposition to Defendants' Motion to Dismiss do not defeat dismissal. Plaintiff incorrectly asserts that his state law wrongful discharge claim is not preempted by the

---

[1] Defendants reiterate their objections to Plaintiff's characterization that Defendants did not comply with the applicable safety or regulatory standards. In the event that the Complaint is not dismissed (which it should be), further proceedings in this action will show that Defendants did not violate pipeline safety regulations or standards as alleged in the Complaint. Again, Defendants reserve all rights, claims, and causes of action that they have or may have as a result of Plaintiff's false or misleading statements.

[2] Defendants' Motion to Dismiss asserts ordinary federal preemption as a defense to Plaintiff's claim. Defendants separately assert complete federal preemption as a basis for this Court's jurisdiction over this matter. Defendants will make further arguments regarding the complete preemptive effect of the Pipeline Safety Act in its forthcoming opposition to Plaintiff's Motion for Remand.

Pipeline Safety Act, that he was not required to exhaust the procedures outlined in Section 60129 prior to challenging his discharge in court, and, in contrast to Fourth Circuit precedent, that this Court is empowered to recognize additional sources of substantial public policy beyond those recognized by the West Virginia state courts.

Plaintiff's arguments are unavailing. Defendants' respectfully request that the Court enter an Order dismissing Plaintiff's Complaint, with prejudice.[3]

## A. Plaintiff's arguments in opposition to Defendants' Motion to Dismiss are waived because of Plaintiff's failure to timely respond.

Defendants timely filed their Motion to Dismiss on Friday, June 6, 2025. See ECF No. 5. Plaintiff's counsel were served via the Court's CM/ECF system on that same date. *See id. p.* 2. The applicable local rules state that that "[m]emoranda and other materials in response to motions shall be filed and served . . . within 14 days from the date of service of the motion." L.R. Civ. P. 7.1(a)(7). Under the Federal Rules of Civil Procedure, when a response period is stated in days, the deadline is calculated by "exclud[ing] the day of the event that triggers the period;" "count[ing] every day, including intermediate Saturdays, Sundays, and legal holidays;" and "includ[ing] the last day of the period[.]" *See* F.R. Civ. P. (a)(1). Accordingly, Plaintiff was required to file his Response on or before Friday, June 20, 2025. Despite that clear deadline, Plaintiff did not file his Response until Sunday, June 22, 2025. Plaintiff did not seek an extension from Defendants' counsel or otherwise inform Defendants that he intended to file an untimely response and Plaintiff's Response offers no explanation for its delay. Defendants assert Plaintiff waived any argument in opposition to Defendants' Motion to Dismiss by his failure to timely respond. *See U.S. v. Certain Real Prop. in*

---

[3] Defendants incorporate each argument asserted in their Motion to Dismiss and accompanying memorandum and write here only to emphasize the deficiencies in Plaintiff's Response.

3

*Waterboro,* 812 F. Supp. 259, 260 (D. Me. 1991) (dismissing action where plaintiff failed to timely respond to motion to dismiss).

Nevertheless, even if Plaintiff's untimely response is considered, the arguments Plaintiff raises fail to defeat Defendants' Motion to Dismiss.

**B.     The Pipeline Safety Act's Anti-Retaliation provision does not carve out state law claims.**

Plaintiff attempts to circumvent the preemptive effect of the Pipeline Safety Act's anti-retaliation Provision, contained in Section 60129, by selectively quoting language in Sections 60120 and 60121, related to enforcement actions.  Plaintiff argues that these provisions—which preserve tort liability and common law claims related to enforcement of the Pipeline Safety Act's regulations—somehow operate to carve out *all* tort claims from the Act's preemptive scope, including wrongful termination claims which fall squarely within the scope of the Act's separate anti-retaliation provision.  When read in context, it is clear that Plaintiff's quoted language does not have the effect Plaintiff suggests.

Section 60120 of the PSA sets out the requirements for pipeline safety enforcement actions by the United States Attorney General. *See* 49 U.S.C. § 60120. This section authorizes the Attorney General to enforce the Pipeline Safety Act's safety standards or any regulation issued under the Pipeline Safety Act, at the request of the Secretary of Transportation. *See id.*, § 60120(a)(1).  The tort liability carveout in this Section is meant to provide that the availability of a federal enforcement action will not "affect the tort liability of any person" for violations of the Pipeline Safety Act's safety standards or safety regulations. *See id.*, § 60120(c).

Similarly, Section 60121 of the PSA authorizes individuals to bring a private cause of action "for an injunction against another person" for a violation of the Pipeline Safety Act's safety standards or any regulation issued under the Pipeline Safety Act. *See id.*, § 60121(a)(1).  That

4

citizen suit provision contains a carveout indicating that "[a] remedy under this section" for injunctive relief "is in addition to any other remedies provided by law. This section does not restrict a right to relief that a person or a class of persons may have under another law or at common law." *Id.*, § 60121(d).

Plaintiff's wrongful discharge claim is not an action to enforce the Pipeline Safety Act's regulations, which would fall under the scope of Section 60120 or 60121. Accordingly, the respective carveouts for tort liability under those Sections have no effect on the availability of Plaintiff's claim in this action.

In contrast to Sections 60120 and 60121, the anti-retaliation provision in Section 60129 of the Act has no language suggesting Congress intended to reserve tort liability or authorize additional common law claims. The anti-retaliation provision provides that:

> No employer may discharge any employee or otherwise discriminate against any current or former employee with respect to his compensation, terms, conditions, or privileges of employment because the employee (or any person acting pursuant to a request of the employee) –
>
> (1) provided, caused to be provided, or is about to provide or cause to be provided, to the employer or the Federal Government information relating to any violation or alleged violation of any order, regulation, or standard under this chapter [ et seq.] or any other Federal law relating to pipeline safety;
>
> (2) refused to engage in any practice made unlawful by this chapter [49 USCS §§ 60101 et seq.] or any other Federal law relating to pipeline safety, if the employee has identified the alleged illegality to the employer; […]

*Id.*, § 60129(a). This Section goes on to establish detailed procedures required to raise a whistleblower complaint with the Secretary of Labor and the timing the Secretary must follow in evaluating such a claim. *See id.*, § 60129(b). It does not contain any provision preserving the availability of tort liability or preserving the availability of claims under common law.

5

Plaintiff asserts "the savings clause in § 60120(c) is clear evidence of Congressional intent *not* to preempt state tort claims" ECF No. 11, p. 5. Defendants submit that Congress's decision to include language expressly preserving additional remedies in Sections 60120 and 60121 but to omit similar language in Section 60129 actually has the opposite effect. "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *City & Cnty. of San Francisco v. U.S. Dep't of Transp.*, 796 F.3d 993, 999 (9th Cir. 2015) (quoting *Russello v. U.S.,* 464 U.S. 16, 23 (1983)). The clear carveouts contained in Sections 60120 and 60121 prove Congress knew what language would be required to preserve the availability of common law claims related to Section 60129. By omitting such language in Section 60129, Congress clearly expressed its intent for the Pipeline Safety Act's anti-retaliation provision to provide the sole and exclusive remedy for the wrongful termination of pipeline safety whistleblowers.

**C.     The Supreme Court's analysis in *English* does not support Plaintiff's argument that his wrongful discharge claim is not preempted.**

Plaintiff's suggestion that Defendant's argument is "inconsistent" with the Supreme Court's reasoning in *English v. General Electric Company* relies on a misreading of that decision. The petitioner in *English* asserted claims for wrongful discharge and intentional infliction of emotional distress against her employer arising out of her status as a nuclear safety whistleblower. *English v. Gen. Elec. Co.*, 496 U.S. 72, 72 (1990). The District Court dismissed petitioner's IIED claim on the ground that it conflicted with the purpose of the whistleblower provision contained in the Energy Reorganization Act of 1975 and was therefore preempted. *See id.* The Fourth Circuit affirmed. *See id.* "The sole question" before the Supreme Court in *English* was "whether the Federal Government has pre-empted petitioner's state-law tort claim for intentional infliction of

emotional distress." *Id.* at 78. The Court answered that question in the negative, reasoning "the mere existence of a federal regulatory or enforcement scheme, even one as detailed as [the Energy Reorganization Act], does not by itself imply pre-emption of state remedies" for IIED. *See id.* at 87. The Court narrowly held that "petitioner's claim for intentional infliction of emotional distress does not fall within the pre-empted field of nuclear safety as that field has been defined in prior cases. Nor does it conflict with any particular aspect of [the ERA's whistleblower provision]." *Id.* at 90. The Court expressly did not address the preemptive effect of the ERA's whistleblower provision on common law wrongful discharge claims, because its petitioner did not appeal the District Court's ruling that she failed to state a claim for wrongful discharge under state law. *Id.* at 77, fn.4.

Defendants do not suggest the anti-retaliation provision of the Pipeline Safety Act preempts personal injury torts, such as IIED. Rather, it is Defendants' contention—consistent with the Fourth Circuit's analysis in *Rayner* and the District Court's analysis in *English*—that the anti-retaliation provision operates to preempt common law actions for wrongful discharge which seek to remedy the same harm that Section 60129 was designed to prevent. Defendants contend that Plaintiff's Complaint raises such a claim and, therefore, is preempted.

**D.　The Fourth Circuit's analysis in *Rayner* is persuasive authority supporting Defendants' arguments in favor of dismissal.**

The Fourth Circuit's analysis in *Rayner v. Smirl* is directly analogous to the instant matter. In *Rayner*, the Fourth Circuit considered whether the whistleblower provision of the Federal Railroad Safety Act of 1970, 84 Stat. 971, *as amended*, 45 U.S.C. § 421–44 (now repealed), preempted a Maryland state law action for the wrongful discharge of a railroad employee who reported alleged railroad safety violations of his employer. 873 F.2d 60 (4th Cir. 1989). Defendants' Motion to Dismiss asks the Court to consider whether the anti-retaliation provision of

7

the Pipeline Safety Act preempts a West Virginia state law action for the alleged wrongful discharge of a pipeline employee who reported alleged pipeline safety violations of his employer.[4]

The version of the Railroad Safety Act whistleblower provision in effect at the time of plaintiff's claim provided that:

> A common carrier by railroad engaged in interstate or foreign commerce may not discharge or in any manner discriminate against any employee because such employee, whether acting in his own behalf or in a representative capacity, has—
>
> > (1) filed any complaint or instituted or caused to be instituted any proceeding under or related to the enforcement of the Federal railroad safety laws; or
> >
> > (2) testified or is about to testify in any such proceeding.

*Rayner*, 873 F.2d at 63 (quoting 45 U.S.C. § 441(a)).

The anti-retaliation provision at issue here similarly provides that:

> No employer[5] may discharge any employee or otherwise discriminate against any current or former employee with respect to his compensation, terms, conditions, or privileges of employment because the employee (or any person acting pursuant to a request of the employee) –
>
> > (1) provided, caused to be provided, or is about to provide or cause to be provided, to the employer or the Federal Government information relating to any violation or alleged violation of any order, regulation, or standard under this chapter [ et seq.] or any other Federal law relating to pipeline safety;

---

[4] Defendants maintain that no Defendant ever employed Plaintiff and, therefore, could not have terminated his employment. Plaintiff knowingly continues to make false assertions regarding his employment status in filings with this Court. Defendants reserve all arguments and defenses arising from the fact that Defendants never employed Plaintiff.

[5] Under 49 U.S.C. § 60129, "employer" is defined as "(A) a person owning or operating a pipeline facility; or (B) a contractor or subcontractor of such a person."

>   (2) refused to engage in any practice made unlawful by this chapter [49 USCS §§ 60101 et seq.] or any other Federal law relating to pipeline safety, if the employee has identified the alleged illegality to the employer; […]

49 U.S.C. at § 60129(a).

As *Rayner* acknowledged, the purpose of the Railroad Safety Act's whistleblower provision was "to protect railroad employees who are harassed, discriminated against, or discharged by their employers for reporting safety violations." *Rayner*, 873 F.2d at 64 (citing H. R. Rep. No. 96–1025, 96th Cong., 2d Sess., *reprinted in* 1980 U.S.C.C.A.N 3830, 3840). Similarly, the Pipeline Safety Act's anti-retaliation provision was enacted to "prohibit[] a pipeline operator, contractor or subcontractor of a pipeline from firing, or taking other adverse action, against an employee" for reporting pipeline safety violations. H.R. REP. 107-605, 30-31, *reprinted in* 2002 U.S.C.C.A.N. 1958, 1970–71 (Jul. 23, 2002).

Notably, like Pipeline Safety Act anti-retaliation provision, the operative version of the Railroad Safety Act whistleblower provision did not contain any language indicating Congress intended to authorize remedies for whistleblower plaintiffs in addition to those provided in the statute. *See Rayner*, 873 F.2d at 64.

The Fourth Circuit determined "[t]he comprehensive remedial scheme for aggrieved railroad employees" provided in the analogous Railroad Safety Act whistleblower provision "serves to confirm its preemptive scope" and "illustrates a congressional intent that the FRSA remedy for railroad 'whistleblowers' be exclusive." *Rayner*, 873 F.2d at 65. Accordingly, the Fourth Circuit held that the federal whistleblower provision preempted its plaintiff's state wrongful discharge action and affirmed the dismissal of plaintiff's claim. *Id.* Defendants argue the Court should follow this persuasive authority and similarly find the comprehensive nature of the Pipeline

Safety Act's anti-retaliation provision demonstrates Congress intended the statute to provide an exclusive remedy for pipeline safety whistleblowers, preempting related common law claims.

Plaintiff suggests *Rayner* should not guide this Court's analysis for three reasons: first, because the Railroad Safety Act was amended after *Rayner* was entered; second, because *Rayner* was decided before the Supreme Court's decision in *English*; and third, because the PSA contains a carveout for tort claims. *See* ECF No. 11, p. 11. Plaintiff's arguments are again ineffective.

For one, Congress' decision to amend the Federal Railroad Safety Act to include a "no preemption" provision expressly exempting state law tort claims from the statute's preemptive reach weighs in Defendants' favor, not Plaintiff's. By adding language in a *later* version of the statute to expressly preserve common law remedies, Congress implicitly confirmed that the language in the *earlier* version of the statute—which is substantially similar to the Pipeline Safety Act—did preempt related common law claims.

Plaintiff's second and third arguments likewise fail to move the needle. As discussed, the Supreme Court's analysis in *English* expressly did not address whether claims for wrongful discharge are preempted by a Federal statute containing comprehensive anti-retaliation provisions. Accordingly, the analysis in *English* opinion has no impact here. Moreover, the carve outs for tort liability Plaintiff references are contained in different provisions of the PSA and have no impact on whether Plaintiff's *Harless* claim—an exception to the at-will employment doctrine—is preempted by the Section 60129 anti-retaliation provision.

E.  **Plaintiff does not explain his failure to raise a whistleblower complaint with the Department of Labor.**

Plaintiff concedes he did not attempt to file an administrative complaint with the Department of Labor prior to bringing this action. However, Plaintiff asserts this failure should not foreclose him from seeking relief now because "[t]he Pipeline Safety Act's complaint

10

procedure is not mandatory for whistleblowers." ECF No. 11, p. 11. His argument relies on his interpretation of Section 60129(b)(1) of the PSA which provides that:

> [a] person who believes that he or she has been discharged or otherwise discriminated against by any person in violation of subsection (a) ***may***, not later than 180 days after the date on which such violation occurs, file (or have any person file on his or her behalf) a complaint with the Secretary of Labor alleging such discharge or discrimination.

49 U.S.C.A. § 60129(b)(1) (emphasis added). Without citing any case law in support of his interpretation, Plaintiff claims the use of the word "may" in this section "plainly makes this procedure discretionary." *See* ECF No. 11, p. 11. Plaintiff's argument ignores established principles of statutory interpretation.

In contrast to Plaintiff's suggestion, "the word "may" has an elusive definition: sometimes it is permissive, yet other times it is mandatory.*"* *U.S. v. Nixon*, 130 F.4th 420, 431 (4th Cir. 2025) (citing *Zadvydas v. Davis*, 533 U.S. 678, 697 (2001)). The meaning of the term "may" depends "on the context of the statute [or regulation], and on whether it is fairly to be presumed that it was the intention of the legislature [or agency] to confer a discretionary power or to impose an imperative duty." *United Hosp. Ctr., Inc. v. Richardson*, 757 F.2d 1445, 1453 (4th Cir. 1985) (quoting *Thompson v. Clifford,* 408 F.2d 154, 158 (D.C. Cir.1968)). There is no indication the use of the word "may" in the above-quoted section is meant to imply that "[a] person who believes that he or she has been discharged or otherwise discriminated against" in violation of the anti-retaliation provision can choose either to file an administrative complaint or pursue another type of relief. Indeed, as discussed above, the fact Congress did not include any language expressly authorizing other forms of relief is evidence this was not Congress' intent. It is more likely Congress meant to convey that it is the employee's choice whether to challenge his alleged

retaliation with the Secretary of Labor under these procedures, but the employee is not compelled to do so.

It is undisputed that Plaintiff did not file a timely complaint with the Department of Labor. Having missed his window to seek such relief, Plaintiff attempts to enlarge the rights provided under the Pipeline Safety Act through filing a state law claim for wrongful discharge in violation of public policy. He cannot do so. Plaintiff's claim alleges he was wrongfully discharged in retaliation for reporting pipeline safety violations. This type of claim must be asserted through the procedures outlined in Section 60129. Plaintiff's failure to follow those procedures does not provide him with a cause of action here.

### F.      Plaintiff's wrongful discharge claim also fails as a matter of law.

Defendants assert that Plaintiff's claim additionally and independently fails to state a claim under West Virginia law for two reasons—first, because the comprehensive anti-retaliation protections contained in the Pipeline Safety Act provide an adequate mechanism to enforce the public policy Plaintiff asserts is at issue; and second, because the PHMSA regulations Plaintiff cites are not a source of substantial policy which could support a wrongful discharge claim under West Virginia law. Plaintiff's arguments in response do not rehabilitate his claim.

####       1.      The Pipeline Safety Act provides a complete remedy for the harm Plaintiff alleges.

West Virginia law provides "[w]here a right not existing at common law is created by statute, and a statutory remedy for its violation is provided, the statutory remedy is exclusive and no other remedy may be pursued." *Guevara v. K-Mart Corp.*, 629 F. Supp. at 1191 (quoting *Mahoney v. Crocker Nat'l Bank*, 571 F. Supp. 287, 293 (N.D. Cal. 1983)). Accordingly, a *Harless* claim exists only where "the statutory remedy is inadequate, or where there is no other private cause of action to enforce the public policy at issue." *Griffith v. Chemours Co.*,

No. 2:21-CV-00368, 2021 WL 4303391, at *3 (S.D.W. Va. Sept. 21, 2021) (Berger, J.). As more fully set forth in Defendants' initial memorandum of law, it is well-settled that Plaintiff cannot pursue a common-law *Harless* claim for wrongful discharge because comprehensive statutory remedies for his alleged harms exist under the Pipeline Safety Act. *See, e.g., Guevara*, 629 F. Supp. at 1192 ("[w]here the Legislature has provided a comprehensive remedial scheme, there is a strong indication that the Legislature intended the remedy to be exclusive"); *Wiley v. Asplundh Tree Expert Co.*, 4 F. Supp. 3d 840, 850 (S.D. W. Va. 2014) (Johnston, J.) (dismissing *Harless* claim where Fair Labor Standards Act "provided a carefully tailored statutory scheme aimed at providing a means of redress for a person who is the victim of a retaliatory discharge").

Plaintiff argues the reasoning in *Guevara* and *Wiley* does not apply to his claim because the mechanism for remedying whistleblower claims under the Pipeline Safety Act contemplates adjudication through Federal Department of Labor, rather than by authorizing a private cause of action which could be filed in a court. In doing so, Plaintiff does not dispute the adequacy of the remedy provided by the Pipeline Safety Act, only the venue in which it is adjudicated. Contrary to Plaintiff's assertion, whether the proscribed remedy is administrative in nature is not the determining factor. Rather, the controlling question is whether the available statutory remedy is ***adequate***.

Plaintiff alleges he was terminated in violation of public policy for raising concerns regarding Defendants' compliance with federal PHMSA regulations. Compl. ¶ 57. To remedy that alleged harm, he seeks "lost wages, back pay, front pay, damages for indignity, embarrassment, humiliation, annoyance, and inconvenience, and punitive damages;" "prejudgment interest;" and "attorney fees and costs." *See* Compl. p. 8. The Pipeline Safety Act provides a complete and adequate remedy for Plaintiff's alleged harm. As discussed, Section 60129 was engaged for the

purpose of protecting pipeline safety whistleblowers against retaliation by their employers. *See* 49 U.S.C. § 60129(a). To that end, the statute authorizes specific remedies available to a successful pipeline safety complainant. In particular, the Secretary of Labor may order the employer to "reinstate the complainant to his or her former position together with the compensation (including back pay) and restore the terms, conditions, and privileges associated with his or her employment" and "provide compensatory damages to the complainant." *Id.*, § 60129(b)(3)(B). The statute also provides for attorneys fees and costs reasonably incurred in connection with bringing the complaint. *Id.* Accordingly, the relief available under Section 60129 would provide Plaintiff with an adequate and complete remedy for his alleged harm. The venue for that relief is inapposite.

"The purpose of a *Harless* claim is to enable persons whose termination violated substantial public policy to recover against their employer when there is ***no other mechanism available*** to enforce the public policy at issue." *Edmonds v. Altice Tech. Servs. US LLC,* 413 F. Supp. 3d 488, 493 (S.D.W. Va. 2019) (Faber, J.) (emphasis added). This is not such a case.

### 2. This Court may not declare a source of substantial public policy that has not been recognized by the West Virginia state courts.

As discussed in Defendant's opening memorandum, the courts of West Virginia have never recognized a *Harless* cause of action based on the PHMSA regulations invoked by Plaintiff. "[A] *Harless* retaliatory discharge claim cannot lie absent a substantial West Virginia public policy allegedly violated in terminating the employee." *Frohnapfel v. ArcelorMittal USA LLC,* 772 S.E.2d 350, 354 (W. Va. 2015) (citing *Shell v. Metropolitan Life Ins. Co.,* 396 S.E.2d 174, 180 (W. Va. 1990)). The Fourth Circuit has advised that federal courts are constrained from recognizing a statute as a source of public policy under *Harless* where the West Virginia state courts have not made such a determination. *See Washington v. Union Carbide Corp.,* 870 F.2d 957, 962 (4th Cir. 1989); *Tritle v. Crown Airways, Inc.,* 928 F.2d 81, 84 (4th Cir. 1990). While Plaintiff's response

14

makes an analogy to other statutes that the West Virginia Courts have recognized may support a *Harless* claim, he fails to identify any opinion declaring the PHMSA regulations to be a "substantial public policy" of West Virginia sufficient to state such a claim. In the absence of such authority, it would be inappropriate for this court to expand *Harless* to allow Plaintiff's claim to proceed.

## CONCLUSION

As set forth in above and in Defendants Motion to Dismiss, Plaintiff's common law wrongful discharge claim is preempted by the comprehensive Pipeline Safety Act anti-retaliation provision. Moreover, Plaintiff fails to identify a substantial public policy upon which he can base his *Harless* claim. Therefore, Plaintiff's retaliatory discharge claim fails as a matter of law and his single count Complaint must be dismissed in its entirety.

**MOUNTAIN VALLEY PIPELINE, LLC,**
**THE MIDSTREAM COMPANY (F/K/A**
**EQUITRANS MIDSTREAM CORPORATION),**
**and EQT CORPORATION,**

**By Counsel**

 */s/ Jennifer J. Hicks*
Jennifer J. Hicks, Esquire (WVSB #11423)
Timothy M. Miller, Esquire (WVSB #2564)
Babst, Calland, Clements & Zomnir, P.C.
300 Summers Street, Suite 1000
Charleston, WV 25301
681-205-8888
681-205-8814 (fax)
jhicks@babstcalland.com
tmiller@babstcalland.com

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BLUEFIELD DIVISION

**MICHAEL BARNHILL,**

      **Plaintiff,**

v.

                            Civil Action No. 1:25-cv-00356

**MOUNTAIN VALLEY PIPELINE, LLC,**
a Pennsylvania limited liability company;
**EQUITRANS MIDSTREAM CORPORATION,**
a Pennsylvania corporation; and
**EQT CORPORATION, a Pennsylvania corporation,**

      **Defendants.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing ***Defendants' Reply Memorandum in Further Support of Defendants' Motion to Dismiss*** was electronically filed June 30, 2025, via the Court's CM/ECF system, which will send a notice of the electronic filing to the following counsel of record:

            John-Mark Atkinson, Esquire
            Natalie R. Atkinson, Esquire
            Atkinson & Frampton, PLLC
            2306 Kanawha Boulevard East
            Charleston, WV 25311
            *Counsel for Plaintiff*


            */s/ Jennifer J. Hicks*
            Jennifer J. Hicks, Esquire (WVSB #11423)