# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
# BLUEFIELD DIVISION

**MICHAEL BARNHILL,**

    **Plaintiff,**

**v.**　　　　　　　　　　　　　　　　　　　　　　　　**Civil Action No. 1:25-cv-00356**

**MOUNTAIN VALLEY PIPELINE, LLC,**
a Pennsylvania limited liability company;
**EQUITRANS MIDSTREAM CORPORATION,**
a Pennsylvania corporation; and
**EQT CORPORATION, a Pennsylvania corporation,**

    **Defendants.**

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO COMPEL ARBITRATION[1]

Defendants Mountain Valley Pipeline, LLC ("MVP"); The Midstream Company (f/k/a Equitrans Midstream Corporation); and EQT Corporation (collectively, "Defendants") submit this Memorandum in support of their Motion to Compel Arbitration. Plaintiff Michael Barnhill ("Plaintiff") asserts a single claim against Defendants for retaliatory discharge in violation of public policy. *See* Complaint [Doc. No. 1-1]. As explained below, however, Plaintiff is bound by an arbitration agreement under which Plaintiff agreed to resolve all disputes arising out of or relating to his work in connection with MVP. Accordingly, Defendants respectfully request the Court enter an Order compelling arbitration and dismissing Plaintiff's Complaint.

---

[1] Defendants previously removed this case to Federal Court and filed a Motion to Dismiss [Doc. Nos. 5 and 6] (the "Motion to Dismiss"). Defendants subsequently obtained a copy of Plaintiff's executed arbitration agreement from his actual employer, Gulf Interstate Field Services, Inc. ("Gulf Interstate"). Accordingly, Defendants request that the Court defer ruling on the pending Motion to Dismiss until after it decides Defendants' Motion to Compel Arbitration.

## II.  FACTS

**A.       Plaintiff's Allegations and Claim**

Plaintiff's Complaint asserts a single cause of action for wrongful termination in violation of public policy. Plaintiff alleges that Defendants wrongfully terminated his employment "for raising concerns with and making complaints to Defendants related to safety issues including improperly welded pipelines and quality of pipes as well as other PHMSA regulations."[2]  *See* Complaint ¶ 57.

Plaintiff alleges that Defendant MVP owns the Mountain Valley Pipeline project, "a natural gas pipeline spanning 303 miles across West Virginia and Virginia." *Id.* at ¶ 7. Plaintiff alleges that he was "hired by" MVP as a welding inspector on the MVP pipeline project beginning in August 2023. *Id.* at ¶ 6. Plaintiff alleges that, as a welding inspector, he "was tasked with inspecting welds on the pipeline as they occurred and ensuring that pipeline joints followed project and federal regulations." *Id.* at ¶ 11. Plaintiff alleges that on November 15, 2023, he discovered corrosion in a particular area of the pipeline which "was of such significance to bring these sections of pipeline out of compliance with construction specifications and federal regulations." *Id.* at ¶ 14. Plaintiff alleges that he reported the condition of the pipeline to Defendants on that same date. *See id.* at ¶ 17. Plaintiff alleges that he later reported the allegedly corroded pipe joints to PHMSA. *See id.* at ¶ 27.

---

[2] Defendants dispute and object to Plaintiff's characterization that Defendants did not comply with the applicable safety or regulatory standards. In the event that the Complaint is not dismissed (which it should be), further proceedings in this action will show that Defendants did not violate pipeline safety regulations or standards as alleged in the Complaint. Defendants reserve all rights, claims, and causes of action that they have or may have as a result of Plaintiff's false or misleading statements.

Plaintiff alleges that, on December 5, 2023, he discovered a weld on the pipeline "that was made without an inspector present." *Id.* at ¶ 28. Plaintiff alleges that "MVP's construction specifications require an inspector to be present for all welds on the pipeline" and that "[b]ecause federal regulations for pipeline construction encompass MVP's construction specifications, any pipeline weld performed without an inspector present is out of compliance with federal regulations." *Id.* at ¶ 29–30. Plaintiff asserts that he reported the incident to his supervisor. *Id.* at ¶ 32. He further alleges that he reported the incident to the PHMSA by email dated December 7, 2023. *Id.* at ¶ 49. Plaintiff alleges that he was terminated on December 8, 2023. *Id.* at ¶ 56.[3]

**B.      Plaintiff's Employment and Arbitration Agreement**

No Defendant has ever shared an employer-employee relationship with Plaintiff. *See* Pre-Assignment Acknowledgement and Arbitration Agreement, attached as Exhibit 1 to Defendants' Motion to Compel Arbitration (the "Arbitration Agreement"). Rather, at all relevant times, Plaintiff was an employee of non-party Gulf Interstate. Within the scope of Plaintiff's employment with Gulf Interstate, he was assigned to perform inspection services on the MVP pipeline project, on a temporary basis. Prior to Plaintiff's employer assigning him to perform inspection services on the MVP pipeline project, Plaintiff executed an Arbitration Agreement, in which Plaintiff expressly acknowledged that Gulf Interstate "is my employer for all purposes, that [Gulf Interstate] is responsible for establishing and paying my wages and benefits and establishing the other terms and conditions of my employment, and that [MVP] is not responsible for such matters." Arbitration Agreement, p. 1.

---

[3] Defendants reiterate that no Defendant ever employed Plaintiff and reserve all rights to raise defenses relating to Plaintiff's employment status.

Plaintiff further agreed:

> In consideration for my assignment by [Gulf Interstate] to provide services to [MVP], I acknowledge and agree that the sole and exclusive forum in which to resolve **any** dispute [. . .] with [Gulf Interstate] and/or [MVP] shall be in final and binding arbitration in accordance with the provisions below:
>
> A. **Any controversy, claim, or dispute arising out of or relating to my work in connection with [MVP] shall be settled by binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association ('AAA')**, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof.
>
> B. The arbitration shall be governed by the Federal Arbitration Act, shall be held in Pittsburgh, Pennsylvania, and shall be conducted before a panel of three (3) arbitrators (the 'Arbitration Panel'). The respondent(s) and I shall each select one arbitrator from the AAA National Panel of Commercial Arbitrators (the 'Commercial Panel'), and the AAA shall select a third arbitrator from the Commercial Panel.
>
> C. **The Arbitration Panel shall have exclusive authority to resolve any disputes of any kind or nature, including enforcement of this Arbitration Agreement**, and shall render a reasoned opinion in writing in support of its decision. The Arbitration Panel may award any relief and damages available in court and may allocate costs, which shall initially be borne equally among the parties. Any award rendered by the Arbitration Panel shall be final, binding, and confidential as between the parties.

*Id.* (emphasis added).

Plaintiff further agreed:

> <u>I WAIVE ANY RIGHT TO LITIGATE SUCH DISPUTES IN A COURT OF LAW, AND WAIVE THE RIGHT TO TRIAL BY JURY, INCLUDING IN EACH CASE FOR DISPUTES INVOLVING DISCRIMINATION, HARASSMENT, RETALIATION, WAGES, HOURS, BENEFITS, AND OTHER TERMS AND CONDITIONS OF MY EMPLOYMENT WITH EMPLOYER</u>.

*Id.* (emphasis in original).

## II.     STANDARD OF REVIEW

Where a dispute that is referable to arbitration pursuant to a written agreement is improperly filed in state or federal court, the Federal Arbitration Act, 9 U.S.C. § 1, *et seq*. ("FAA"), mandates that "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not an issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.

The FAA reflects a strong and "liberal" public policy in favor of the strict enforcement of arbitration agreements by the terms set forth in such agreements. *See AT&T Mobility LLC v. Concepcion,* 563 U.S. 333, 346 (2011).

Under the FAA, agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.

A party's ability to challenge a valid arbitration agreement is ***extremely limited***, as only "[g]enerally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2 of the FAA."  *Strawn v. AT&T Mobility, Inc.*, 593 F. Supp. 2d 894, 898 (S.D. W. Va. 2009) (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681 (1996)); *see also Concepcion*, 563 U.S. at 343 ("Although § 2's savings clause preserves generally applicable contract defenses, nothing in it suggests an intent to preserve state-law rules that stand as an obstacle to the accomplishment of the FAA's objectives.").

Indeed, the "principal purpose" of the FAA is "to ensure that private arbitration agreements are enforced according to their terms." *Concepcion*, 563 U.S. at 347  fn. 6; *see also Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010).  The FAA's directive to federal and state courts "is mandatory" and, therefore, courts have "no choice but to grant a motion to compel

5

arbitration where a valid arbitration agreement exists and the issues in a case fall within its purview." *Adkins v. Labor Ready, Inc.*, 303 F. 3d 496, 500 (4th Cir. 2002); *Hightower v. GMRI, Inc.*, 272 F. 3d 239, 241 (4th Cir. 2001).

### III.     ARGUMENT

**A.     Plaintiff's claim is subject to arbitration.**

To determine whether claims should be sent to arbitration, the Fourth Circuit established a four-part test by which courts should evaluate motions to compel arbitration. Under the test, the moving party must demonstrate:

> (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the [non-moving party] to arbitrate the dispute.

*Adkins*, 303 F.3d at 500–501. *See also Syl. pt. 2, Schumacher Homes of Circleville, Inc. v. Spencer*, 774 S.E.2d 1, 4 (W. Va. 2015). Under this test, it is clear that Plaintiff claim must be referred to arbitration.

**1.     A dispute exists between Plaintiff and Defendants.**

The filing of a civil action is sufficient evidence of a dispute. *See Canyon Sudar Partners, LLC v. Cole ex rel. Haynie*, No. 3:10-1001, 2011 U.S. Dist. LEXIS 34043, at *37 (S.D. W. Va. Mar. 29, 2011) ; *Captain D's, LLC v. McClenathan*, No. 2:06-0261, 2006 U.S. Dist. LEXIS 85798, at *15–16 (S.D. W. Va. Aug. 1, 2005). Here, Plaintiff filed a Complaint advancing a claim for alleged retaliatory discharge against Defendants and seeking monetary damages. As such, it is self-evident that a dispute exists between Plaintiff and Defendants, and the first element of the four-part test is satisfied.

> **2.  A written arbitration agreement exists, and Plaintiff's claim falls within the scope of that agreement.**

The second element of the four-part test presents the two most important questions, namely whether a written arbitration agreement exists between the parties and whether that agreement covers the claims asserted. *See Adkins*, 303 F.3d at 500–501. Here, both aspects of the second element have been satisfied. First, the written arbitration agreement is attached as Exhibit 1. Second, the Arbitration Provision covers the sole claim asserted in the Complaint.

Specifically, Plaintiff asserts a single claim against Defendants for alleged retaliatory discharge in connection with his work on the MVP pipeline project. *See* Complaint. The Arbitration Agreement requires that "any dispute [. . .] with [Gulf Interstate] and/or [MVP]" shall be arbitrated and that "[a]ny controversy, claim, or dispute arising out of or relating to my work in connection with [MVP] shall be settled by binding arbitration[.]" Arbitration Agreement, p. 1. The Arbitration Agreement further provides that Plaintiff:

> <u>WAIVE[S] ANY RIGHT TO LITIGATE SUCH DISPUTES IN A COURT OF LAW, AND WAIVE[S] THE RIGHT TO TRIAL BY JURY, INCLUDING IN EACH CASE FOR DISPUTES INVOLVING DISCRIMINATION, HARASSMENT, RETALIATION, WAGES, HOURS, BENEFITS, AND OTHER TERMS AND CONDITIONS OF MY EMPLOYMENT WITH EMPLOYER.</u>

*Id.* (emphasis in original). Plaintiff's claims clearly fall within the scope of the Arbitration Provision and the second element is satisfied.

> **3.  The transaction in question relates to interstate commerce.**

The transactions underlying the Arbitration Agreement and Plaintiff's claim relate to interstate commerce as those transactions involve Plaintiff's work on a federally regulated interstate pipeline.

7

The term "involving commerce" is broadly interpreted to include "more than" "persons and activities within the flow of interstate commerce" and "signals an intent to exercise Congress's commerce power in full." *Allied-Bruce Terminex Co. v. Dobson*, 513 U.S. 265, 273–74 (1995) (holding that a contract between a local resident and a local termite inspection company evidenced a transaction in "commerce"); *see also* 9 U.S.C. § 1. The Supreme Court has explained that "Congress' Commerce Clause power 'may be exercised in individual cases without showing any specific effect upon interstate commerce' if in the aggregate the economic activity in question would represent 'a general practice. . . subject to federal control.'" *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56–57 (2003) (quoting *Mandeville Island Farms, Inc. v. Am. Crystal Sugar Co.*, 334 U.S. 219, 236 (1948)). "This is not a rigorous inquiry; in fact, the contract need only the slightest nexus with interstate commerce" for the FAA to apply. *Nova CTI Caribbean v. Edwards*, C.A. No. 03-5319, 2004 U.S. Dist. LEXIS 41, *9 n.3 (E.D. Pa. Jan. 8, 2004).

Here, Plaintiff concedes that his claim arises from his work on an interstate pipeline, that the pipeline is subject to Pipeline and Hazardous Materials Safey Administration ("PHMSA") regulation, and that the PHMSA regulations are the "substantial public policy" giving rise to his retaliatory discharge claim. *See* Complaint, ¶¶ 6, 7, 26–27, 30, 47, 49, 57. Thus, both Arbitration Agreement itself and Plaintiff's underlying claim "involve interstate commerce."

Interstate pipelines are heavily regulated under federal law. The United States Congress has provided PHMSA with authority to regulate the safety of natural gas pipeline facilities and persons engaged in the transportation of natural gas. PHMSA's enabling statute, the Pipeline Safety Act, 49 U.S.C. §§ 60101–60140, was enacted for the express purpose "to provide adequate protection against risks to life and property posed by pipeline transportation and pipeline facilities

by improving the regulatory and enforcement authority of the Secretary of Transportation." 49 U.S.C. § 60102.

The Supreme Court of the United States has explained that it is well settled that Congress occupied the field of matters related to wholesale sales and transportation of natural gas in interstate commerce. *See Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293 (1988) (observing that the Natural Gas Act comprehensively regulates the field of gas transportation from the area of production to the area of consumption). Likewise, even when addressing arbitration provisions in oil and gas lease disputes, courts have held that because the leases are intended for the extraction of natural gas to be transported in interstate commerce, that is sufficient to constitute a transaction "involving commerce." *See Bird v. Turner*, C.A. No. 14-cv-97, 2015 U.S. Dist. LEXIS 116057 (N.D. W. Va. Sept. 1, 2015); *Allen v. Chevron U.S.A. Inc.*, C.A. No. 22-cv-18, 2023 U.S. Dist. LEXIS 48874 (N.D. W. Va. March 22, 2023); *Chesapeake Appalachia, L.L.C. v. Ostroski*, 199 F. Supp. 3d 912 (M.D. Pa. Aug. 8, 2016).

As such, the transaction here clearly relates to interstate commerce, and the third element is satisfied.

### 4. Plaintiff failed to arbitrate the dispute.

Failure or refusal to arbitrate may be inferred from Plaintiff's decision to file a civil action rather than an arbitration demand. *See Captain D's, LLC*, 2006 U.S. Dist. LEXIS 85798, at *16; *Van Lehn v. MedaStat USA, L.L.C.*, C.A. No. 05-cv-00283, 2005 U.S. Dist. LEXIS 48928, *6 (S.D. W. Va. Aug. 1, 2005). Here, Plaintiff filed his Complaint without taking any steps to arbitrate his claims. Additionally, upon receipt of the Arbitration Agreement, the undersigned counsel demanded that Plaintiff voluntarily dismiss his claims and proceed to arbitration, but Plaintiff

failed to do so.[4] Accordingly, the fourth and final element of the Fourth Circuit's four-part test is satisfied, and the present case should be dismissed or, in the alternative, sent to arbitration. **The Arbitration Agreement delegates authority to the Arbitration Panel to decide whether the Arbitration Agreement is enforceable.**

The Supreme Court of the United States has explained that "Under the [FAA], arbitration is a matter of contract, and courts must enforce arbitration contracts according to their terms." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 67 (2019). "Applying the Act, we have held that parties may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway questions of arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy.'" *Id.* at 67–68 (quoting *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010)). "We have explained that an 'agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other.'" *Id.* at 68 (quoting *Rent-A-Center*, 561 U.S. at 70).

> We must interpret the [FAA] as written, and the [FAA] in turn requires that we interpret the contract as written. When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue. That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless.

---

[4] *See* Email from J. Hicks to J. Atkinson and N. Atkinson, dated June 26, 2025, attached as Exhibit 2 to Motion to Compel Arbitration.

*Id*. "Just as a court may not decide a merits question that the parties have delegated to an arbitrator, a court may not decide an arbitrability question that the parties have delegated to an arbitrator." *Id*. at 69.

Here, the Arbitration Agreement states that "The Arbitration Panel have exclusive authority to resolve any disputes of any kind or nature, including enforcement of this Arbitration Agreement[.]" Arbitration Agreement, p. 1. Accordingly, even if Plaintiff attempts to dispute the enforceability of the Arbitration Agreement, this Court must defer ruling on enforceability and compel even that threshold issue to arbitration.

**B.      Dismissal, rather than a stay, is warranted.**

Plaintiff's claim falls within the scope of the Arbitration Provision, and, therefore, the Court should dismiss this civil action in its entirety. Although the FAA provides that a court "shall . . . stay the trial of the action" when it compels arbitration (*see* 9 U.S.C. § 3), courts, including the Fourth Circuit, have recognized that dismissal is proper when all of the claims are arbitrable. *See Van Lehn*, 2005 U.S. Dist. LEXIS 48928, at *7 ("dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable"). Indeed, the United States District Court for the Southern District of West Virginia has recognized that "available relief [under the FAA], however, is not limited strictly to a stay of the proceedings." *Id*. On that basis, in the *Van Lehn* case, the Court dismissed the civil action because all the claims alleged were arbitrable. *Id*.

As set forth above, the only claim in this matter is arbitrable under the Arbitration Provision and the Arbitration Panel has exclusive authority "to resolve any disputes of any kind or nature, including enforcement of this Arbitration Agreement." Arbitration Agreement, p. 1. For this reason, dismissal of this action, rather than a stay pending completion of the arbitration, is warranted.

## V. CONCLUSION

For the foregoing reasons, Defendants request that the Court enter an order that compels arbitration and dismisses this civil action because Plaintiff lacks the standing to bring his claim in this Court. In the alternative, Defendants request the Court to enter an order that stays this civil action and compels the Plaintiff to assert his claim in arbitration pursuant to the valid and binding Arbitration Agreement executed by Plaintiff.

**MOUNTAIN VALLEY PIPELINE, LLC,
THE MIDSTREAM COMPANY (F/K/A
EQUITRANS MIDSTREAM CORPORATION),
and EQT CORPORATION,**

**By Counsel**

 */s/ Jennifer J. Hicks*
Jennifer J. Hicks, Esquire (WVSB #11423)
Timothy M. Miller, Esquire (WVSB #2564)
Babst, Calland, Clements & Zomnir, P.C.
300 Summers Street, Suite 1000
Charleston, WV 25301
681-205-8888
681-205-8814 (fax)
jhicks@babstcalland.com
tmiller@babstcalland.com

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
# BLUEFIELD DIVISION

**MICHAEL BARNHILL,**

    **Plaintiff,**

**v.**                                                             **Civil Action No. 1:25-cv-00356**

**MOUNTAIN VALLEY PIPELINE, LLC,**
a Pennsylvania limited liability company;
**EQUITRANS MIDSTREAM CORPORATION,**
a Pennsylvania corporation; and
**EQT CORPORATION, a Pennsylvania corporation,**

    **Defendants.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing ***Memorandum of Law in Support of Defendants' Motion to Compel Arbitration*** was electronically filed July 1, 2025, via the Court's CM/ECF system, which will send a notice of the electronic filing to the following counsel of record:

John-Mark Atkinson, Esquire
Natalie R. Atkinson, Esquire
Atkinson & Frampton, PLLC
2306 Kanawha Boulevard East
Charleston, WV 25311
*Counsel for Plaintiff*

                                                  */s/ Jennifer J. Hicks*
                                                  Jennifer J. Hicks, Esquire (WVSB #11423)