**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BLUEFIELD DIVISION**

**MICHAEL BARNHILL,**

      **Plaintiff,**

v.

                                                **Civil Action No. 1:25-cv-00356**

**MOUNTAIN VALLEY PIPELINE, LLC,**
a Pennsylvania limited liability company;
**EQUITRANS MIDSTREAM CORPORATION,**
a Pennsylvania corporation; and
**EQT CORPORATION, a Pennsylvania corporation,**

      **Defendants.**

**DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION TO REMAND**

Defendants assert Plaintiff's claim is completely preempted by the Federal Pipeline Safety Act, 49 U.S.C. §§ 60101–60140, and, therefore, "arises under" federal law for the purposes of 28 U.S.C. § 1331. *See* ECF No. 1. On that basis, Defendants removed this action from the Circuit Court of Monroe County West Virginia to this Federal District Court. Plaintiff now moves to remand this matter back to state court, contending his state law wrongful discharge claim falls outside of the Pipeline Safety Act's preemptive scope, and, therefore, does not present a federal question authorizing Defendants' removal. *See* ECF No. 10.

The United States Congress has authorized the Pipeline and Hazardous Materials Safety Administration (PHMSA) to regulate the safety of natural gas pipeline facilities and persons engaged in the transportation of natural gas. PHMSA's enabling statute, the Pipeline Safety Act, 49 U.S.C. §§ 60101–60140, was enacted "to provide adequate protection against risks to life and property posed by pipeline transportation and pipeline facilities by improving the regulatory and enforcement authority of the Secretary of Transportation." *Id.*, § 60102. To promote that purpose,

Congress afforded explicit protection to employees who report pipeline safety violations or refuse to engage in an activity the employer believes would violate the pipeline safety regulations. *See id.*, § 60129(a)(1). The Pipeline Safety Act's anti-retaliation provision expressly prohibits pipeline employers from discharging or discriminating against an employee who reports a pipeline safety violation, and they provide a federal remedy to employees who claim they have been discharged or retaliated against for reporting safety violations. *See generally, id.*, § 60129. Plaintiff concedes that his claims arise from his work on an interstate pipeline, that the pipeline is subject to PHMSA regulation, and that the alleged "substantial public policy" giving rise to his claims are PHMSA regulations. (*See* Complaint, ¶¶ 6, 7, 26–27, 30, 47, 49, 57). These allegations fall squarely within the scope of the Pipeline Safety Act's comprehensive anti-retaliation provision. As discussed further herein and in Defendants' Motion to Dismiss, the federal statutory framework provided by the Pipeline Safety Act, and the comprehensive body of regulations promulgated thereunder, is strong evidence Congress' desire for pipeline safety issues to be regulated exclusively by the federal government. Accordingly, Plaintiff's state-law wrongful discharge claim is completely preempted by the federal Pipeline Safety Act and Defendants' removal to this Court is permissible and appropriate.

Because this Court's jurisdiction over this matter is proper, Plaintiff's Motion to Remand should be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff's Complaint asserts a single cause of action for retaliatory discharge in violation of public policy. Plaintiff asserts he was wrongfully terminated "for raising concerns with and making complaints to Defendants related to safety issues including improperly welded pipelines and quality of pipes as well as other PHMSA regulations." *See* Complaint ¶ 57.

Plaintiff alleges Defendant MVP owns the Mountain Valley Pipeline project, "a natural gas pipeline spanning 303 miles across West Virginia and Virginia." *Id.,* ¶ 7. Plaintiff alleges he worked as a welding inspector on the Mountain Valley Pipeline project beginning in August 2023. *Id.,* ¶ 6. Plaintiff alleges that, as a welding inspector, he "was tasked with inspecting welds on the pipeline as they occurred and ensuring that pipeline joints followed project and federal regulations." *Id.,* ¶ 11. Plaintiff asserts that, on November 15, 2023, he discovered corrosion in a particular area of the pipeline which "was of such significance to bring these sections of pipeline out of compliance with construction specifications and federal regulations." *Id.,* ¶ 14. Plaintiff asserts he reported the condition of the pipeline to Defendants on that same date. *See id.,* ¶ 17. Plaintiff asserts he later reported the allegedly corroded pipe joints to PHMSA. *See id.,* ¶ 27. Plaintiff asserts that, on December 5, 2023, Plaintiff discovered a weld on the pipeline "that was made without an inspector present." *Id.,* ¶ 28. Plaintiff alleges "MVP's construction specifications require an inspector to be present for all welds on the pipeline" and "[b]ecause federal regulations for pipeline construction encompass MVP's construction specifications, any pipeline weld performed without an inspector present is out of compliance with federal regulations." *Id.,* ¶¶ 29–30. Plaintiff asserts he reported the incident to his supervisor. *Id.,* ¶ 32. He further alleges he reported the incident to the PHMSA by email dated December 7, 2023. *Id.,* ¶ 49. Plaintiff alleges he was terminated on December 8, 2023. *Id.,* ¶ 56.

Defendants strongly object to Plaintiff's assertion that Defendants did not comply with applicable safety or regulatory standards in connection with the Mountain Valley Pipeline project. Defendants further contend that no Defendant ever employed Plaintiff and, therefore, could not have terminated his employment as alleged.

Plaintiff commenced the above-captioned action by filing a Complaint in the Circuit Court of Monroe County, West Virginia. *See* ECF No. 1-1. Defendants removed this matter to this Court and promptly moved to dismiss on the basis that Plaintiff's claim for retaliatory discharge in violation of public policy is preempted by the anti-retaliation provision of the Pipeline Safety Act, 49 U.S.C. § 60129, which requires resolution of such claims to be adjudicated by the Federal Secretary of Labor. *See id.* Plaintiff filed the instant Motion to Remand and for Attorneys Fees concurrently with his Response in Opposition to Defendants' Motion to Dismiss.[1] *See* ECF Nos. 9–11. Thereafter, Defendants became aware that Plaintiff is bound by an arbitration agreement under which he agreed to resolve all disputes arising out of or relating to his work in connection with the Mountain Valley Pipeline project. As a result, Defendants filed a Motion to Compel Arbitration asking this Court to dismiss Plaintiff's Complaint so his claim may proceed to arbitration. *See* ECF No. 13.

## LEGAL STANDARD

Congress has provided a right to removal from state to federal court for any case which could have originally been brought in federal court. *See* 28 U.S.C. § 1441(a). One source of original jurisdiction is 28 U.S.C. § 1331, which provides "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." The "well-pleaded complaint rule" ordinarily directs the court "to look no farther than the plaintiff's complaint in determining whether a lawsuit raises issues of federal law capable of creating federal-question jurisdiction under 28 U.S.C. § 1331." *Custer v. Sweeney*, 89 F.3d 1156, 1165 (4th Cir. 1996). However, the "complete preemption doctrine" is "an independent corollary

---

[1] Defendants contend that Plaintiff waived any arguments against dismissal for failure to timely respond. *See* ECF No. 12, pp. 3–4.

of the well-pleaded complaint rule, and trumps the plaintiff's characterization of his claim by 'convert[ing] an ordinary state common law complaint into one stating a federal claim.'" *Id.* (citations omitted). The doctrine applies where Congress has acted to "so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Metro. Life Ins. Co. v. Taylor,* 481 U.S. 58, 63–64 (1987). "Whether a state cause of action is preempted in a particular case is a question of congressional intent." *Rayner v. Smirl*, 873 F.2d 60, 64 (4th Cir. 1989). The touchstone of this inquiry is whether Congress "provided the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003).

## ARGUMENT

This Court has jurisdiction over the instant civil matter under its federal question jurisdiction. Plaintiff's retaliatory discharge claim, although pleaded as a state-law cause of action, is nevertheless a claim arising out of the laws of United States as a result of the "complete preemption doctrine." The complete preemption doctrine provides that "a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 22 (1983). Complete preemption arises where Congress intended to completely displace state law in some area, effectively making any related state-law claim a federal question such that it is deemed to "arise under" federal law. In other words, "Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Taylor*, 481 U.S. at 63–64.

Plaintiff asserts the complete preemption doctrine should be limited to a narrow class of statutes recognized by the United Supreme Court has specifically authorized—*i.e.* the Labor Management Relations Act, the Employee Retirement Income Security Act, and the National Bank

Act. *See* ECF No. 10, pp. 4–5. While complete preemption is limited, it is not as limited as Plaintiff suggests. Indeed, the Fourth Circuit has expanded the types of cases subject to complete preemption to include claims arising under the Copyright Act,[2] the Federal Railway Safety Act,[3] the Railway Labor Act,[4] the Interstate Commerce Commission Termination Act,[5] and the Securities Litigation Uniform Standards Act.[6] Courts in other jurisdictions have further expanded the doctrine to cover claims arising under the Air Transportation Safety and System Stabilization Act,[7] the Bankruptcy Code,[8] and the Federal Communications Act.[9]

　　While the Fourth Circuit recognizes a presumption against complete preemption, that presumption is rebuttable where a defendant demonstrates "Congress'[s] intent in enacting the federal statute at issue was to extinguish the state-law claim." *Skidmore v. Norfolk S. Ry. Co.*, 1 F.4th 206, 212 (4th Cir. 2021) (quoting *Metro. Life Ins. Co. v. Mass.*, 471 U.S. 724, 738 (1985)). "This requires a showing that: (1) the preempting statute displays a clear congressional intent to 'entirely displace' state law; and (2) the preempting statute creates an exclusive federal cause of action in an area of 'overwhelming national interest.'" *Id.* The touchstone of this inquiry is whether Congress "provided the exclusive cause of action for the claim asserted and also set forth

---

[2] *See Rosciszewski v. Arete Assocs., Inc.*, 1 F.3d 225, 232 (4th Cir. 1993).

[3] *See Rayner v. Smirl*, 873 F.2d 60, 63 (4th Cir. 1989).

[4] *See Arbogast v. CSX Corp.*, 831 F.2d 290, 1987 WL 38662 (4th Cir. 1987).

[5] *See Skidmore v. Norfolk S. Ry. Co.*, 1 F.4th 206 (4th Cir. 2021).

[6] *See Brockway v. Evergreen Intern. Trust*, 496 Fed. Appx. 357 (4th Cir. 2012).

[7] *See In re WTC Disaster Site*, 414 F.3d 352 (2d Cir. 2005); *In re World Trade Center Disaster Site Litigation*, 467 F. Supp. 2d 372 (S.D. N.Y. 2006).

[8] *See In re Miles*, 430 F.3d 1083 (9th Cir. 2005).

[9] *See Bastien v. AT&T Wireless Services, Inc.*, 205 F.3d 983 (7th Cir. 2000); M*cClure Telephone Co. v. AT & T Communications of Ohio, Inc.*, 650 F. Supp. 2d 699 (N.D. Ohio 2009); *Steuben Contracting, Inc. v. Employers Ins. of Wausau*, 975 F. Supp. 479 (W.D. N.Y. 1997).

procedures and remedies governing that cause of action." *Anderson*, 539 U.S. at 8. In other words, if the Pipeline Safety Act provides Plaintiff "an exclusive remedy, his state claim for wrongful discharge is preempted and removal was appropriate." *Rayner*, 873 F.2d at 63.

Plaintiff's claim satisfies this standard.

**A.    The Pipeline Safety Act Completely Preempts Plaintiff's Claim.**

**1.    *Congress Intended the Pipeline Safety Act to Entirely Displace State Law Remedies for Pipeline Safety Whistleblowers.***

As detailed in Defendants' Memorandum in Support of Defendants' Motion to Dismiss, the anti-retaliation provision of the Pipeline Safety Act operates to preempt state law whistleblower claims in the field of pipeline safety. ECF No. 6, pp. 4–9.

Congress has the authority to expressly preempt state law by defining the scope of preemption or to impliedly preempt state law where congressional intent to supersede state law may be inferred. *See* U.S. Const., Art. VI, Cl. 2; *Fid. Fed. Sav. & Loan Ass'n v. dela Cuesta,* 458 U.S. 141, 152–53 (1982). Whether a state cause of action is preempted in a particular case is a question of congressional intent. *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 208 (1985). That intent can be inferred from a "scheme of federal regulation . . . so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it," or where an Act of Congress "touch[es] a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." *Eng. v. Gen. Elec. Co.,* 496 U.S. 72, 79 (1990) (quoting *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218 (1947)).

The Pipeline Safety Act contains an express preemption provision which provides, in relevant part, that a "State authority may not adopt or continue in force safety standards for interstate pipeline facilities or interstate pipeline transportation[,]" except with respect to

administering one-call notification[10] (or damage prevention) programs that meet certain statutory requirements. 49 U.S.C. § 60104(c). The Fourth Circuit has considered the scope of preemption under the Pipeline Safety Act and determined the text of the statute, "its legislative history, administration implementation, and judicial interpretation, attest to federal preemption of the field of safety with respect to the establishment and enforcement of standards regulating the interstate transmission of gas by pipeline." *Wash. Gas Light Co. v. Prince George's Cnty. Council,* 711 F.3d 412, 420 (4th Cir. 2013) (quoting *Tenneco Inc. v. Pub. Serv. Comm'n of W. Va.,* 489 F.2d 334, 336 (4th Cir. 1973). The purpose of the Pipeline Safety Act is to reduce injuries to people and damage to property caused by pipeline accidents. *See* 49 U.S.C. § 60102. The anti-retaliation provision furthers these goals by protecting pipeline employees who report safety violations.

    The comprehensive nature of the procedures outlined in the Pipeline Safety Act's anti-retaliation provision "serves to confirm its preemptive scope." *See Rayner*, 873 F.2d at 65. Under Section 60129(a) it is unlawful for a pipeline owner or a contractor or subcontractor of a pipeline owner to discharge an employee or otherwise discriminate against an employee because he has "provided, caused to be provided, or is about to provide or cause to be provided, to the employer or the Federal Government information relating to any violation or alleged violation of any order, regulation, or standard under this chapter or any other Federal law relating to pipeline safety" or "refused to engage in any practice made unlawful by this chapter or any other Federal law relating

---

[10] A one-call notification program is defined as "a system operated by an organization that has as 1 of its purposes to receive notification from excavators of intended excavation in a specified area in order to disseminate such notification to underground facility operators that are members of the system so that such operators can locate and mark their facilities in order to prevent damage to underground facilities in the course of such excavation." 49 U.S.C § 6102(1); *see also* 49 C.F.R. § 198.37. Under the Pipeline Safety Act, a state one-call program must, at a minimum, provide for (1) participation by all underground facility operators, (2) by all excavators, and (3) be flexible and effective enforcement. 49 U.S.C. § 6103(a)(1)(A)–(C).

to pipeline safety, if the employee has identified the alleged illegality to the employer." 49 U.S.C. § 60129(a)(1)–(2). The federal cause of action articulated in § 60129 of the Pipeline Safety Act authorizes anyone "who believes that he or she has been discharged or otherwise discriminated against by any person in violation of [the anti-retaliation provision]" to file a whistleblower claim with the Secretary of Labor and to enforce any order issued by the Secretary through a private cause of action. *See id.,* § 60129(b). If the Secretary of Labor determines the employer has violated the anti-retaliation provision, the Secretary may enter an order requiring the employer to reinstate the employee with back pay and to "provide compensatory damages" and costs, including attorneys' fees. *See id.,* § 60129(b)(3)(B).

In addition to providing robust protections for pipeline safety whistleblowers, the anti-retaliation provision also includes safeguards for pipeline owners and operators. For example, the anti-retaliation provision provides that, in the event the Secretary of Labor finds that a whistleblower complaint "is frivolous or has been brought in bad faith," the prevailing employer may be awarded reasonable attorneys' fees. *Id.* at § 60129(3)(C). Additionally, the anti-retaliation procedures are not available where the whistleblower "act[ed] without direction from the employer (or such employer's agent)" and "deliberately causes a violation of any requirement relating to pipeline safety[.]" *Id.*, § 60129(d).

The "'presumption that a remedy was deliberately omitted from a statute is strongest when Congress has enacted a comprehensive legislative scheme including an integrated system of procedures for enforcement.'" *Rayner*, 873 F.2d at 65 (quoting *Cf. Pilot Life v. Dedeaux*, 481 U.S. 41, 54 (1987)). The fact that the anti-retaliation provision provides a comprehensive scheme for raising pipeline whistleblower complaints, authorizes specific remedies for pipeline whistleblowers, and seeks to protect pipeline owners and operators from frivolous whistleblower

9

claims is strong evidence of Congress's clear intent to preempt state law whistleblower claims related to pipeline safety.

Neither the text nor the legislative history of Section 60129 indicate any desire by Congress to authorize remedies not included in the statute. In fact the opposite is true. "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *City & Cnty. of San Francisco v. U.S. Dep't of Transp.,* 796 F.3d 993, 999 (9th Cir. 2015) (quoting *Russello v. U.S.,* 464 U.S. 16, 23 (1983)). By comparison, however, the citizen suit provision of the Pipeline Safety Act, codified at Section 60121 contains clear language that "[a] remedy under this section" for injunctive relief "is in addition to any other remedies provided by law. This section does not restrict a right to relief that a person or a class of persons may have under another law or at common law." 49 U.S.C. § 60121(d). By including this carveout in the enforcement action provision, but omitting similar language in the anti-retaliation provision, Congress clearly expressed its intent for the Pipeline Safety Act's anti-retaliation provision to provide the sole and exclusive remedy for the wrongful termination of pipeline safety whistleblowers.

      **2.**    *The Pipeline Safety Act Provides the Exclusive Remedy for Pipeline Safety Whistleblowers.*

The anti-retaliation provision of the Pipeline Safety Act makes it unlawful for a pipeline owner, or the contractor or subcontractor of a pipeline owner, to discharge an employee or otherwise discriminate against an employee because he has "provided, caused to be provided, or is about to provide or cause to be provided, to the employer or the Federal Government information relating to any violation or alleged violation of any order, regulation, or standard under this chapter or any other Federal law relating to pipeline safety" or "refused to engage in any practice made

10

unlawful by this chapter or any other Federal law relating to pipeline safety, if the employee has identified the alleged illegality to the employer." 49 U.S.C. § 60129(a)(1)–(2).

  A pipeline safety whistleblower may adjudicate his claim by filing a complaint with the Federal Secretary of Labor alleging he has been discharged or otherwise discriminated against in violation of the statute's anti-retaliation protections. *See Id.*, § 60129(b)(1). Upon a successful complaint, the Secretary of Labor may enter an order requiring the employer to "reinstate the complainant to his or her former position together with the compensation (including back pay) and restore the terms, conditions, and privileges associated with his or her employment" and "provide compensatory damages to the complainant." *Id.,* § 60129(b)(3)(B). The statute also provides for attorneys fees and costs reasonably incurred in connection with bringing the complaint. *Id.*

  Plaintiff alleges he was a pipeline employee. *See* Compl. ¶¶ 6, 11. He alleges he reported certain safety violations to Defendants and to PHMSA (*see id.* ¶¶ 15, 17, 32 49) and refused to engage in certain activities he believed would have violated the PHMSA regulations (*see id.* ¶¶ 23, 34). He alleges he was then terminated for these actions. *See id.* ¶ 56. To remedy that alleged harm, he seeks "lost wages, back pay, front pay, damages for indignity, embarrassment, humiliation, annoyance, and inconvenience, and punitive damages;" "prejudgment interest;" and "attorney fees and costs." *See* Compl. p. 8. Accordingly, the anti-retaliation creates a specific mechanism by which a pipeline employee may obtain relief for alleged retaliation. If the employee is successful, the statute authorizes broad monetary remedies. Had Plaintiff followed the procedures outlined in Section 60129, he could have vindicated the same interest he now asserts through his state law claim.

### 3. *The Fourth Circuit's Analysis in Rayner Provides Persuasive Authority Against Remand.*

In *Rayner v. Smirl*, the Fourth Circuit analyzed the Federal Railroad Safety Act's whistleblower provision—which Defendants contend is substantially similar to the anti-retaliation provision of the Pipeline Safety Act—and determined it preempted state law, allowing removal to federal court. *See* 873 F.2d 60 (4th Cir. 1989). In *Rayner,* a railroad employee brought suit against his employer alleging he had been retaliated against for making safety complaints. The operative version of the Railroad Safety Act contained an "explicit preemption provision" which prohibits states from adopting regulations related to railroad safety, as well as a comprehensive whistleblower provision which "serves to confirm its preemptive scope." *Id.* at 65. Relying on those provisions, the railroad removed plaintiff's wrongful discharge claim to federal court. *Id.* at 63. After the District Court refused to remand the case upon finding complete preemption, the Fourth Circuit affirmed. The Fourth Circuit specifically noted that "Rayner's claim of wrongful discharge for 'whistleblowing' is inextricably tied to the question of precisely what railroad safety practices he was blowing the whistle on." *Id.* at 66. The Fourth Circuit found clear Congressional intent to completely preempt state law given the statute's express preemption provision, and the fact that "the 'whistleblower' provision of the Federal Railroad Safety Act provides appellant a federal remedy for his employer's alleged retaliatory acts," making removal proper. *Id.* at 67. The Fourth Circuit's well-reasoned opinion is persuasive authority on this court.

The anti-retaliation provision in the Pipeline Safety Act—which occupies the same grounds as Plaintiff's state-law wrongful discharge claim—similarly provides "a clear expression of congressional intent to create exclusive federal jurisdiction over plaintiff's cause of action." *Bailey v. Norfolk & W. Ry. Co.*, 842 F. Supp. 218, 222 (S.D. W. Va. 1994) (Faber, J.). Following the Fourth Circuit's reasoning in *Rayner*, Plaintiff's wrongful termination claim must be completely

12

preempted based upon the broad preemptive language contained in Section 60104(c), and the comprehensive Whistleblower protections contained in Section 60129.

    **4.**    *The Pipeline Safety Act does not Preserve Tort Liability for Actions to Enforce its Anti-Retaliation Provision.*

Plaintiff asserts that his claim is saved from preemption by Section 60120 of the Pipeline Safety Act which states that "[t]his chapter does not affect the tort liability of any person." 49 U.S.C. § 60120. *See* ECF No. 10, p. 6. He asserts that this result is "emphasized" by the carveout for common law remedies related to the Act's Section 60121 citizen suit provision. *See id.* Plaintiff goes on to suggest that courts reviewing this issue "uniformly limit the preemptive reach of the Pipeline Safety Act to safety standards[.]" *Id.*, p. 7. Plaintiff's arguments in this regard are misleading.

For one, Plaintiff misrepresents the impact of Section 60121(d) on his claim. That provision provides only that the availability of a private cause of action "for an injunction against another person" authorized under Section 60121 does not preempt other common law remedies. This provision is "virtually identical to subsections in the citizens-suit provisions of several [other] statutes. . . . [and] means only that the provision of such suit does not revoke other remedies. It . . . cannot be read to mean that the Act as a whole does not supplant [other] remedies but only that the particular section authorizing citizen suits does not do so." *City of Milwaukee v. Illinois*, 451 U.S. 304, 328–329 (1981) (construing Federal Water Pollution Control Act and citing other environmental statutes containing similar provisions). Plaintiff's wrongful discharge claim does not fall within the scope of the Section 60121 citizen suit provision. Thus, the carveout contained in Section 60121(d) has no effect on the availability of Plaintiff's claim in this action.

The Court must examine "the language and design of the statute as a whole." *E.g., K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988); *see Duncan v. Walker,* 533 U.S. 167, 174 (2001) (it

13

is "a cardinal principle of statutory construction" that "a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant"). The Supreme Court has "cautioned against reading a text in a way that makes part of it redundant." *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 669 (2007). If Congress intended to categorically exempt all tort claims from the scope of the Pipeline Safety Act through Section 60121(d), it would not have needed to include an express carve-out for common law claims under its citizen suit provision. In addition, the Supreme Court has advised that state common law may be preempted, despite the existence of a broad savings clause, where that common law right "is so repugnant to the statute that the survival of such right would in effect deprive the subsequent statute of its efficacy[.]" *Texas & P. Ry. Co. v. Abilene Cotton Oil Co.*, 204 U.S. 426, 437 (1907). Plaintiff's reading of the Pipeline Safety Act would allow a potential pipeline safety whistleblower to sidestep the procedures required under the anti-retaliation provision to seek state law relief for the same harm – *in particular, the protections against frivolous claims afforded to pipeline owners*. This result contravenes the purpose of the anti-retaliation provision, which was intended to incentivize pipeline safety whistleblowers to bring timely safety complaints while also protecting against frivolous complaints.

Plaintiff has not identified any case from any jurisdiction holding that Section 60129 does not completely preempt state law pipeline safety whistleblower claims. In fact, none of the cases Plaintiff cites in support of his Motion for Remand even discuss the anti-retaliation provision that Defendants contend provides grounds for preemption. *See e.g. Baldonado v. El Paso Nat. Gas Co.*, CIV-08-0008 JC/LCS, 2008 WL 11322139, at *1 (D.N.M. May 7, 2008), *report and recommendation adopted*, 2008 WL 11322212 (D.N.M. June 4, 2008) (recommending remand of IIED claim without discussion of anti-retaliation provision); *Slavich v. Broadhurst*, CIV. A. 93-

1646, 1993 WL 500800, at *4 (E.D. La. Nov. 29, 1993) (remanding state law tort claims for damages under Natural Gas Act); *Am. Energy Corp. v. Texas E. Transmission, LP*, 701 F. Supp. 2d 921, 928 (S.D. Ohio 2010) (denying motion to dismiss conversion claim with no mention of anti-retaliation provision).

The injury torts raised in Plaintiff's cited cases are easily distinguishable from the wrongful discharge claim asserted here because the Pipeline Safety Act does not provide a cause of action for personal injury or property damage claims related to pipeline safety regulations. This is in contrast to the comprehensive remedies available for retaliatory discharge under the anti-retaliation provision. As discussed, whether a cause of action is completely preempted by federal law turns on whether Congress "provided the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action." *Anderson*, 539 U.S. at 8. Because the Pipeline Safety Act provides "an exclusive remedy" for alleged retaliation, Plaintiff's "state claim for wrongful discharge is preempted and removal was appropriate." *See Rayner*, 873 F.2d at 63.

**B.    Plaintiff's Request for Fees is Unwarranted.**

By statute, a district court is permitted to award attorney fees and costs in an order remanding a case. 28 U.S.C. § 1447(c) (stating that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of removal"). The court looks to the "reasonableness of the removal" to determine whether an award of attorneys' fees is appropriate. *Martin v. Franklin Capitol Corp.*, 546 U.S. 132, 141 (2005). "Absent unusual circumstances, courts may award attorney fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Id.* "Although there is no bright line rule as to the definition of 'objectively reasonable,' courts that have applied the

*Martin* standard typically focus upon whether the removing party has offered a credible reason for removal, even if it later becomes clear that the removing party was incorrect on the facts or the law." *Roberts v. Nix*, CV 1:22-00235, 2023 WL 6444892, at *2 (S.D.W. Va. Sept. 29, 2023) (Faber, J.)

Defendants have not located any opinion, in this jurisdiction or elsewhere, interpreting the potential preemptive effect of the Pipeline Safety Act's anti-retaliation provision. In the absence of such authority, Defendants looked to analogous Fourth Circuit precedent in *Rayner* which advises that where a federal whistleblower provision provides "an exclusive remedy" a plaintiff's "state law claim for wrongful discharge is preempted" and may be properly removed to federal court. *See* 873 F.2d at 63. Defendants did so in good faith. Accordingly, even assuming *arguendo* Defendants' arguments fall short, and this matter is remanded, an award of attorney's fees under § 1447 is not appropriate. *Martin*, 546 U.S. at 141.[11]

---

[11] Additionally, the Parties would not be in any court if Plaintiff would have complied with his contractual obligation to bring his claims in arbitration.

## CONCLUSION

Defendants properly removed Plaintiff's Complaint under the Court's federal question jurisdiction. Accordingly, Plaintiff's Motion to Remand must be denied.

**MOUNTAIN VALLEY PIPELINE, LLC,
THE MIDSTREAM COMPANY (F/K/A
EQUITRANS MIDSTREAM CORPORATION),
and EQT CORPORATION,**

**By Counsel**

 */s/ Jennifer J. Hicks*
Jennifer J. Hicks, Esquire (WVSB #11423)
Timothy M. Miller, Esquire (WVSB #2564)
Babst, Calland, Clements & Zomnir, P.C.
300 Summers Street, Suite 1000
Charleston, WV 25301
681-205-8888
681-205-8814 (fax)
jhicks@babstcalland.com
tmiller@babstcalland.com

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BLUEFIELD DIVISION

**MICHAEL BARNHILL,**

    **Plaintiff,**

v.

                                          **Civil Action No. 1:25-cv-00356**

**MOUNTAIN VALLEY PIPELINE, LLC,**
a Pennsylvania limited liability company;
**EQUITRANS MIDSTREAM CORPORATION,**
a Pennsylvania corporation; and
**EQT CORPORATION, a Pennsylvania corporation,**

    **Defendants.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing ***Defendants' Response in Opposition to Plaintiff's Motion for Remand*** was electronically filed July 7, 2025, via the Court's CM/ECF system, which will send a notice of the electronic filing to the following counsel of record:

John-Mark Atkinson, Esquire
Natalie R. Atkinson, Esquire
Atkinson & Frampton, PLLC
2306 Kanawha Boulevard East
Charleston, WV 25311
*Counsel for Plaintiff*

                */s/ Jennifer J. Hicks*
                Jennifer J. Hicks, Esquire (WVSB #11423)