**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BLUEFIELD DIVISION**

**MICHAEL BARNHILL,**

      **Plaintiff,**

v.

                                                                        **Civil Action No. 1:25-cv-00356**

**MOUNTAIN VALLEY PIPELINE, LLC,**
a Pennsylvania limited liability company;
**EQUITRANS MIDSTREAM CORPORATION,**
a Pennsylvania corporation; and
**EQT CORPORATION,** a Pennsylvania corporation,

      **Defendants.**

**ORDER REGARDING DISCOVERY OF
<u>ELECTRONICALLY STORED INFORMATION</u>**

The undersigned parties jointly, by and through their counsel, having expressed their mutual intent to seek the discovery of electronically stored information ("ESI"), hereby stipulate and agree that the following terms and conditions shall govern and supplement any local rules regarding the search, retrieval and production of ESI in this matter (hereinafter, the "Protocol").

**I.   DEFINITIONS**

    A.   "Bates Number"" means a unique alphanumeric identifier associated with every physical sheet of paper, electronic file, electronically stored TIFF image, or other tangible thing, consisting of (1) an alphabetic portion identifying the producing party and/or other characteristics of the production; and (2) a numeric portion incremented according to a scheme defined at the producing discretion to ensure that the alphanumeric identifier for each physical sheet of paper, electronic file, electronically stored TIFF image, or other tangible thing is unique. The alphanumeric identifier shall be no more than sixteen (16) characters in length.

B.      "Document(s)" is defined to be synonymous in meaning and equal in scope to the usage of the term in Rule 34(a) of the Federal Rules of Civil Procedure and includes ESI existing in any medium from which information can be translated into reasonably usable form, including but not limited to e-mail and attachments, word processing documents, spreadsheets, graphics, presentations, images, or text files.

C.      "ESI" (electronically stored information) is defined as files, documents, or other data that are stored on computers, file servers, the internet, or any other devices or media.

D.      "Extracted Text" means the text extracted from a Native File and includes all header, footer, and document body information.

E.      "Hard Copy Document" means a Document kept in physical form, as opposed to electronic form, in the ordinary course of a party's business.

F.      "Load File" means an electronic file containing information identifying a set of paper-scanned images or processed ESI and indicating where individual pages or files belong together as documents, including attachments, and where each document begins and ends. A Load File will also contain data relevant to the individual documents, including extracted and user-created Metadata, coded data, as well as OCR or Extracted Text. A separate Load File linking corresponding images will also be provided if productions are made in Static Image format.

G.      "Metadata" means (i) information embedded in a Native File that is not ordinarily viewable or printable from the application that generated, edited, or modified such Native File; (ii) information generated automatically by the operation of a computer or other information technology system when a Native File is created, modified, transmitted, deleted or otherwise

manipulated by a user of such system; and (iii) information from e-mails such as author, recipient, cc, bcc, sent date and subject.

      H.      "'Native File" means ESI in the original file format of the application in which such ESI is normally created, viewed, or modified.

      I.      "OCR" means the optical character recognition text that is generated by software used in conjunction with a scanner that is capable of reading image-based documents and making such documents searchable.

      J.      "Producing Party" means the party producing documents.

      K.      "Requesting Party" means the party serving requests for documents pursuant to Rule 34 of the Federal Rules of Civil Procedure ("Document Requests").

      L.      "Spreadsheet" means an electronic file that displays multiple cells that together make up a grid consisting of rows and columns, each cell containing either alphanumeric text or numeric values, including, but not limited to, files created with Microsoft Excel.

      M.      "Static Image" means a representation of ESI produced by conve1ting a Native File into a standard image format capable of being viewed and printed on standard computer systems. A Tagged Image File Format (TIFF) image is an example of a Static Image.

**II.**      **PURPOSE**

This order will govern discovery of electronically store information ("ESI") (including scanned hard-copy documents) in the above-captioned matter as a supplement to the Federal Rules of Civil Procedure and any other applicable orders and rules. The parties agree that they may apply to the Court to make changes to this ESI Protocol and they retain the right to utilize all Federal Rules of Civil Procedure to obtain discovery and to enforce discovery requests.

**III.   COOPERATION**

The parties are expected to cooperate and commit to cooperate in good faith throughout the matter.

**IV.   CUSTODIANS AND SEARCH TERMS**

A. If applicable, within fourteen (15) days of receiving the first Document Requests directed to it, the Producing Party shall provide the Receiving Party with a list of search terms/combinations ("Initial Search Terms"), to be run or previously run on its ESI repository that the Producing Party reasonably believes will uncover ESI responsive to the Document Requests served on that Party.

B. The Parties further agree that if search terms beyond the Initial Search Terms appear to be necessary to obtain discoverable information, the Parties will discuss the running of further search terms ("Supplemental Search Terms"). The Parties agree to work in good faith to negotiate and agree on appropriate Supplemental Search Terms, if any. To the extent the Parties reach agreement on or the Court enters an order requiring Supplemental Search Terms beyond the Initial Search Terms, if any, ESI containing one or more of these agreed upon Supplemental Search Terms will be captured, preserved, reviewed for responsiveness (as well as confidentiality and privilege) and produced, if appropriate, pursuant to this Protocol.

**V.   PRODUCTION FORMATS**

The Parties are to produce the ESI in accordance with **Exhibit A** and **Exhibit B** and according to the following terms:

A. Subject and in addition to other requirements of Exhibit A and Exhibit B, the Parties agree to produce ESI in TIFF or PDF formats. If a Receiving Party reasonably believes it is necessary to see a document or ESI item in native format, then a Receiving Party may, in good

faith, request that the document or ESI item be produced in native format, and the producing party shall within ten (10) business days produce such document in the original color format. If particular ESI warrants a different format, the parties will cooperate to arrange for the mutually acceptable production of ESI;

   B.  Color: Documents or ESI containing color need not be produced initially in color. If an original document or ESI item contains color markings and a Receiving Party reasonably believes it is necessary to see those markings in their original color to understand the meaning or content of the document, then a Receiving Party may, in good faith, request that the document or ESI item be produced in its original colors, and the producing party shall within ten (10) business days produce such document in the original color format. The production of documents and/or ESI in color shall be made in TIFF format or in an alternative format, such as single page JPEG format, that provides sufficient quality for the review of these documents and/or ESL. All requirements for productions stated in this Order regarding productions in TIFF format would apply to any productions of documents and/or ESI in color made in such an alternative format;

   C.  If either party produces documents or ES1 that contain information that is described by "codes," such as abbreviations or internal nomenclature, the meaning of which could not be reasonably determined by the requesting party, the requesting party may identify the specific document and encoding (by Bates Number and cell/location) that contains the code and request that the producing party provide a written description of the meaning of the code within ten (10) business days without such request counting towards the requesting party's discovery limitations. If the producing party objects to producing such information, the Parties will meet and confer before seeking Court intervention;

D.	Microsoft "Auto" Feature and Macros: When feasible, "auto date" macros will be turned off during file processing.

## VI. DISPUTES

The parties shall make good faith attempts to resolve all of their disputes arising out of this Protocol promptly and without the need for Court intervention consistent with the requirements of the applicable rules and orders of the Court. The parties agree that they will make a good faith effort to raise any dispute within ninety (90) days of receiving a production from the Producing Party and will engage in a meaningful meet and confer before seeking Court intervention.

## VII. CONFIDENTIALITY

This order will be subject to the terms of any protective order entered either prior or subsequent to the entering of this order.

## VIII. MODIFICATION

This Stipulated Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown.

**IT IS SO ORDERED.**

Dated:   July 24, 2025



Omar J. Aboulhosn
United States Magistrate Judge

Agreed to by:

*/s/ Jennifer J. Hicks*
Jennifer J. Hicks, Esquire (WVSB #11423)
Timothy M. Miller, Esquire (WVSB #2564)
Babst, Calland, Clements & Zomnir, P.C.
300 Summers Street, Suite 1000
Charleston, WV 25301
681-205-8888
681-205-8814 (fax)
jhicks@babstcalland.com
tmiller@babstcalland.com
*Counsel for Mountain Valley Pipeline, LLC,*
*The Midstream Company (f/k/a Equitrans Midstream Corporation)*
*and EQT Corporation*

and


*/s/ John-Mark Atkinson (w/ permission*
Natalie Atkinson, Esquire (WVSB #12030)12014)
Atkinson & Frampton, PLLC
2306 Kanawha Boulevard, East
Charleston, WV 25311
natkinson@amplaw.com
johnmark@amplaw.com
*Counsel for Plaintiff Michael Barnhill*

## EXHIBIT A

## PROCESSING AND PRODUCTION PROTOCOL

A. **ESI Production.** With respect to processing and production of ESI, the Parties will comply with the following protocol:

1. **TIFF Files to Be Standard Production.** The Parties will produce all ESI in Group IV compressed single-page TIFF image format, with associated load files for Relativity or similar programs, which shall include a .dat file for native documents and metadata, .tiff/.jpeg for all images (all pictures/photographs shall be produced in color.) and an image load file in Opticon (OPT) format.

   a. The parties shall produce fully extracted text (as available) in document level text files that are approp1iately identified with the TIFF images, or for those documents that do not have extracted text, OCR will be produced. The parties may make reasonable requests for documents, such as spreadsheets, databases, or text files larger than 300 pages in size, to be produced in Native Format.

   b. The load file shall contain the categories of metadata listed in Exhibit B. The parties shall meet and confer with respect to the form of production for any audio and video files in non-standard formats. When redacting fielded data, the field in the load file shall indicate that content was redacted. For example, if an email subject is being withheld, the field in the load file shall state, "REDACTED."

   c. Files will be named with consecutive numbers.

   d. The metadata load file will contain the name of the file as it was saved in the ordinary course of business.

   e. For e-mails with attachments and other container files such as .ZIP files, the metadata load file will contain "begin-attachment" and "end-attachment" values representing the low and the high consecutive numbers representing the names of the files in that attachment range or container file.

2. **TIFFing Settings**

   a. Documents produced in TIFF format shall retain tracked changes, embedded comments, hidden text, and speaker notes. Comments, speaker notes, and hidden text should appear in the text files, unless redactions are necessary to remove privileged material.

   b. The parties agree to exchange with their document productions information electronically identifying the confidentiality designation given to, and the custodians of, the ESI pursuant to any protective order entered in this case.

3. **Production of Data**

   a. Unless they require redaction, Excels and Access databases that contain comments and track changes, csvs, spreadsheets, other similar files, and other files that are in a format that does not render to TIFF in a readable format shall be produced in native and will be accompanied by a single page image placeholder. The placeholder shall indicate that the document was produced in native form, and shall be endorsed with the document's bates number and confidentiality designation. The parties agree to meet and confer in good faith regarding the production of structured data in other formats.

   b. The parties are only required to produce data from a database if it can be produced in a reasonably useable format. If a party cannot produce the data in a reasonably useable format, the parties will meet and confer in good faith to provide reasonable information requested and/or to work out an appropriate format for the data.

   c. Production volume should be structured as the following:

      i. "DATA" Directory-containing load files (.dat; .opt)

      ii. "IMAGES" Directory - containing single-page, group IV, 300- DPI TIFF/JPEG files. Each sub-directory should not exceed more than 2,000 files.

      iii. "NATIVES" Directory - containing produced native files. Each sub-directory should not exceed more than 2,000 files. "TEXT" Directory - containing document-level

extracted text / OCR files. Each sub-directory should not exceed more than 2,000 files.

4. **Production of Load Files**

   a. A load file compatible with loading to the kCma Relativity litigation support platform (.dat file for metadata, nativelink and textlink; .opt file for single page .TIFF / JPEG records). The load file will contain links to extracted full text files, TIFF files, and where they occur, Native files.

   b. The parties shall meet and confer to the extent reasonably necessary to facilitate the import and use of the produced materials with commercially available e-discovery review platforms.

   c. The list of fields does not create any obligation to create or manually code fields that are not automatically generated by the processing of the ESI or that do not exist as part of the original metadata of a document.

5. **Processing Specifications**

The preferred time zone of processing ESI is EST. Care should be taken, however, that any alteration of time zone during processing does not interfere with or alter original metadata of that ESI. To the extent that a party has already processed ESI using a different time zone, the Producing Party will note the time zone used in its processing. The Producing Party shall consistently produce all ESI processed using the same time zone to the extent such production is feasible for the Producing Party.

6. **De-Duplication**

A party is only required to produce a single copy of a responsive document per Custodian. Documents may be de-duplicated on a global or per custodian basis.

### 7.  E-Mail Thread Analysis

E-mail thread analysis may be used to reduce the volume of e-mails reviewed and produced, provided that the Parties disclose such use. The produced e-mails must include all of the responsive information from a thread, including responsive attachments.

### 8.  Encrypted or Password-Protected ESI

For any ESI that exists in encrypted format or is password-protected, the Producing Party shall undertake reasonable efforts to provide the parties a means to gain access to the files.

### 9.  Archive Files

For any archive files, (zip, jar, rar, gzip, TAR, etc.), all contents should be extracted from the archive with source pathing and family relationships maintained/captured. The archive container file does not need to be included in the production.

B.  **Native Files.** Absent special circumstances, PowerPoint Presentations source code, large diagrams, Excel files and/or .csv files, autocad files or other large engineering specific files should be produced in native format, unless they have redactions. Native Files should be provided in a self- identified "Natives" directory. Each Native File should be produced with a corresponding single-page TIFF placeholder image, which will contain language indicating that the document is being produced as a Native File. Native Files should be named with the beginning Bates number that is assigned to that specific record in the production. A "NativeLink" entry for each Native File should be included in the .DAT load file indicating the relative file path to each Native File on the production media. Native Files should be produced with extracted text and applicable metadata fields.

C.  **Native Redactions.** In the event that either party finds the redaction of certain documents in image form to be overly burdensome, they may elect to redact such documents in

their native form. The produced documents must clearly indicate which portions have been redacted, and the searchable text provided must accurately reflect the contents of the document as produced.

      D.      **Hard-Copy (or Paper) Documents.** The Producing Party has discretion to produce hard copy documents in hard copy or electronic format.

           1.      **Voluminous Hard Copy Documents.** If voluminous documents exist only in hard copy format making production in electronic format unreasonable, the Parties will meet and confer to discuss alternative production requirements, concerns and/or formats.

           2.      **Document Unitization.** If hard copy documents are being produced in electronic format, to the extent possible and on an ongoing basis, the parties will endeavor to apply unitization practices consistent with the following description:

           a.      Each page of a hard copy document shall be scanned into an image and, if a document is more than one page, the unitization of the document and any attachments shall be maintained as it existed in the original when creating the image file.

           b.      For documents that contain affixed notes, the pages will be scanned once with the note(s) as they appear on the page and once without the notes so all content is captured. These pages will be treated as part of the same document.

           c.      The relationship of documents in a document collection (e.g., cover letter and enclosures, e-mail and attachments, binder containing multiple documents, folder or other documents where a parent-child relationship exists between the documents) shall be maintained through the scanning or conversion process. If more than one level of parent-child relationship exists, documents will be kept in order, but all will be treated as children of the initial parent document. Such information shall be captured and produced in the metadata/coding load file in a manner that will allow the parent-child relationship among documents to be reconstituted by the Receiving Party in commercially available document management or litigation review software.

E.      **Control/Bates Numbering**.  The parties will produce native files and static images with a legible, unique control number. For Native Files, the Control/Bates Number will be provided in the file name. For static images, the Control/Bates Number will be electronically "burned" onto the image at a location that does not obliterate, conceal, or interfere with any information from the source document. No other legend or stamp will be placed on the static image other than a confidentiality legend (where applicable), redactions (consistent with any protective order entered in this case), and the control number identified above. Confidentiality legends shall be "burned" onto the static image at a location that does not obliterate or obscure any information from the source document. The parties shall identify Native Files that are produced. Confidential designations can be added to the file name for Native Files identified as Protected Info1mation pursuant to any protective order entered in this action.

F.      **File Naming Conventions**.  For Static Image productions, each page/image file shall be named with the unique control/bates number of the page of the Document, followed by the extension ".TIF". The Control/Bates numbering convention shall not contain any spaces, special characters or symbols other than a hyphen ( - ) or underscore ( _ ).

**EXHIBIT B**

| FIELD | DESCRIPTION | SAMPLE DATA |
|---|---|---|
| **Bates Begin** | Bates number of the first page in the document. | ABC00000000l |
| **Bates End** | Bates number of the last page in the document. | ABC000000 15 |
| **Family Begin** | Bates number of the first page in the document family. | ABC0000O00l |
| **Family End** | Bates number of the last page in the document family. | ABC000000J0 |
| **Page Count** | Number of pages produced. | 15 |
| **Custodian** | The name of the custodian of this document. | Doe, John |
| **All Custodians** | All Custodians of a document if deduplication is applied during data processing. Each custodian listed should be separated by a semi-colon (";") | Smith, Mary; Jones, Williams |
| **Record Type** | The type of record (e.g.; email, attachment) | Email |
| **Document Type** | Document type as identified by metadata associated with tl1e native document ("Native Type") indicating the application that created the native document (e.g; Microsoft Excel; Gmail, Outlook Email, etc.); | Outlook Email |
| **File Size** | Generally a decimal number indicating the size in bytes of a file. | 15896 |
| **From** | Author of the e-mail | Doe, John < jcloe@com12a ny.com > |
| **To** | Recipient(s) of the e-mail | Smith, Mary <msmith@comgany.com>; Jones, Williams jwilliams@company.com> |
| **CC** | Copies of the e-mail | Brown, Jane <jbrown@comi;la llv.com> |
| **BCC** | Blind Copies of the e-mail | Doe, John <jdoe@comgany.com > |
| **E-Mail Subject** | Subject of the e-mail message | RE: Our Project |

| File Name | Original file name of the document; may contain the subject of the e-mail for e-mails | RE Our Project.msg MyAttachment.x:lsx |
|---|---|---|
| File Extension | Original file extension of the document when it was collected | Msg |
| DateTime Sent | Email date and time sent; US formatted date, Ex. MM/DD/YYY hh:mm:ss AM/PM | 07/17/2025 06:46:10 AM |
| DateTime Received | Email date and time received; US formatted date, Ex. MM/DD/YYY hh:mm:ss AM/PM | 07/17/2025 06:46:10 AM |
| DateTime Created | Date and time created (non-email documents); US formatted date, Ex. MM/DD/YYYY hh:mm:ss AM/PM | 07/17/2025 06:46:10 AM |
| DateTime Last Modified | Last modified date and time (non-email documents; US formatted date, Ex. MM/DD/YYYY hh:mm:ss AM/PM | 07/17/2025 06:46:10 AM |