IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

MICHAEL BARNHILL,

        Plaintiff,

v.                              CIVIL ACTION NO. 1:25-00356

MOUNTAIN VALLEY PIPELINE, LLC,
a Pennsylvania limited liability
company, et al.,

        Defendants.

## MEMORANDUM OPINION

By Order entered on March 31, 2026, the court granted plaintiff's motion to remand and remanded this matter to the Circuit Court of Monroe County, West Virginia.  The reasons for that decision follow.

### I. Background

According to the Complaint, Mountain Valley Pipeline, LLC ("Mountain Valley") owns the Mountain Valley Pipeline project, a natural gas pipeline system that extends 303 miles from West Virginia to Virginia.  See Complaint at ¶ 7 (ECF No. 1-1). Plaintiff Michael Barnhill was hired by Mountain Valley as a welding inspector in August 2023.  See id. at ¶ 6.  "As a welding inspector, Mr. Barnhill was tasked with inspecting welds on the pipeline as they occurred and ensuring that pipeline joints followed project and federal regulations."  Id. at ¶ 11.

On November 15, 2023, Barnhill discovered corrosion in

three separate sections of pipeline joints.  See id. at ¶ 13.
Barnhill believed the corrosion was sufficient to take these
sections of pipe out of compliance with federal safety
regulations and, accordingly, he reported the joints' defective
condition to his supervisor who agreed that the corroded joints
were out of compliance.  See id. at ¶¶ 14-19.

Despite their corroded condition, Mountain Valley's chief
inspector directed that the joints be installed.  See id. at ¶
20.  The chief inspector is said to have stated, "If you want to
keep your job, just install [the joints]."  Id. at ¶ 21.
Barnhill refused to approve installation of the joints and
declined to create false inspection reports about the joints.
See id. at ¶ 23.

The corroded joints that, according to Barnhill were
noncompliant with federal regulations, were subsequently welded
into the pipeline.  See id. at ¶ 25.  Barnhill reported this to
the Pipeline and Hazardous Materials Safety Administration
("PHMSA").  See id. at ¶ 27.

Thereafter, on December 5, 2023, Barnhill discovered
another noncompliant and/or illegal weld.  See id. at ¶¶ 28, 29.
Once again, Barnhill reported the noncompliance to his
supervisors.  See id. at ¶ 32.  Despite pressure from his
superiors and others associated with the project, Barnhill

2

refused to amend his report to state the weld was acceptable. See id. at ¶¶ 34-53.  He also reported the noncompliant weld to PHMSA.  See id. at ¶¶ 49-50.  Ultimately, on December 8, 2023, the illegal weld was removed and replaced with a weld inspected and approved by Barnhill.  See id. at ¶ 55.  Later that day, Mountain Valley terminated Barnhill's employment.  See id. at ¶ 56.

Thereafter, Barnhill filed this civil action in the Circuit Court of Monroe County, West Virginia, alleging that he was wrongfully discharged by defendants, hereinafter referred to collectively as Mountain Valley Pipeline ("MVP").[1]  West Virginia state law recognizes retaliatory discharge as a cause of action under the rule of Harless v First National Bank of Fairmont, 246 S.E. 2d 270 (W.Va. 1978).[2]

---

[1] According to the Complaint, defendant Equitrans Midstream Corporation is the primary interest owner of defendant Mountain Valley Pipeline, LLC and has since been acquired by defendant EQT Corporation, the lead developer of the Mountain Valley Pipeline project.  See Complaint at ¶¶ 8-10.

[2] "West Virginia's tort of retaliatory discharge evolved as an exception to the rule that an employer may terminate an at-will employee at any time."  Frohnapfel v. ArcelorMittal Weirton LLC, 100 F. Supp.3d 556, (N.D.W. Va. 2015).  "The tort was first carved out in Harless v. First National Bank, where the Supreme Court of Appeals of West Virginia held that 'where the employer's motivation for the discharge is to contravene some substantial public policy principle, then the employer may be liable to the employee' notwithstanding the general at-will termination rule."  Id. (quoting Harless, Syl., 246 S.E.2d 270 (1978)).

MVP removed the case on the basis of federal question jurisdiction, 28 U.S.C. §§ 1331, 1441 and 1446.  MVP contended that the complete preemption doctrine confers federal jurisdiction.  According to them, by passage of the Federal Pipeline Safety Act, 49 U.S.C. §§ 60101-60140 et seq., Congress intended to occupy completely the field of pipeline safety in the transportation of natural gas.

## II.  Removal Jurisdiction

Civil actions brought in state court may only be removed to federal court if the federal court has "original jurisdiction" over the action.  28 U.S.C. § 1441(a).  The removing defendant bears the burden of demonstrating that the federal district court has jurisdiction.  See Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994).  Furthermore, because removal raises federalism concerns, the court must carefully scrutinize the facts to ensure that removal is appropriate and resolve any doubt about the propriety of removal in favor of remanding to state court.  See id.

There are three general grounds upon which a defendant can sustain removal: (1) where the parties are completely diverse, the defendant does not reside within the state where the state court action had been initiated, and the amount in controversy exceeds the statutory minimum set forth by Title 28 United

4

States Code Section 1332; (2) where the complaint asserts a federal claim so as to trigger jurisdiction under Title 28 United States Code Section 1331; or (3) where the complaint contains a state law claim that is completely preempted by federal law, so that the federal court must also consider it as giving rise to federal question jurisdiction under Title 28 United States Code Section 1331.  Lontz v. Tharp, 413 F.3d 435, 439-40 (4th Cir. 2005)).

Under the well-pleaded complaint rule a court may not look beyond the specific allegations of the complaint to determine whether the case presents an issue of federal law.  Gully v. First Nat'l Bank, 299 U.S. 109, (1936); Louisville & Nashville R.R. v. Mottley, 211 U.S. 149 (1908); Custer v. Sweeney, 89 F.3d 1156, 1165 (4th Cir. 1996) (ordinarily, courts look no further than the plaintiff's complaint in determining whether a lawsuit raises issues of federal law capable of creating federal question jurisdiction under 28 U.S.C. § 1331).  However, where a federal cause of action completely preempts a state cause of action as set out in the complaint, that complaint becomes one necessarily arising under federal law.  Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1 (1983).  "Although complete presumption claims are rare, they are held to satisfy

5

the well-pleaded complaint requirements of <u>Mottley</u> and <u>Gully</u>."
<u>Lontz</u> at 413 F.3d 440.

Removal jurisdiction is to be strictly construed, and the presumption is against finding complete preemption.  <u>Custer v. Sweeney</u>, 89 F.3d 1156 (4th Cir. 1996).  A defendant who removes therefore has the burden of demonstrating that a federal statute "indisputably displaces any state cause of action over a given subject matter."  <u>Lontz</u>, at 413 F.3d 440.  Congressional intent to displace entirely state law with an exclusive federal cause of action must be clear in the text of the federal statute at issue.  <u>Metro. Life Ins. Co., v. Taylor</u>, 481 U.S. 58 (1987). Reasonable doubt must be resolved against complete preemption. <u>Maryland Stadium Authority v. Ellerbe Bechet Inc.</u>, 407 F.3d 255 (4th Cir. 2005).  The federal cause of action must replace the state cause of action such that the state cause of action no longer exists.  <u>King v. Marriott Int'l, Inc.</u>, 337 F.3d 421 (4th Cir. 2003); <u>Beneficial Nat'l Bank v. Anderson</u>, 539 U.S. 1, (2003).

### III. Discussion

Removal jurisdiction can sometimes be a difficult concept to grasp, especially in the context of preemption.  However, our appeals court succinctly explained the doctrine of complete preemption ten years ago:

6

The third justification for removal is actually a narrow exception to the well-pleaded complaint rule. "[K]nown as the 'complete preemption' doctrine," Caterpillar Inc. v. Williams, 482 U.S. 386, 393, 107 S. Ct. 2425, 96 L. Ed.2d 318 (1987), it provides that if the subject matter of a putative state law claim has been totally subsumed by federal law — such that state law cannot even treat on the subject matter — then removal is appropriate. See Aetna Health Inc. v. Davila, 542 U.S. 200, 124 S. Ct. 2488, 2494-95, 159 L. Ed.2d 312 (2004); Franchise Tax Board v. Construction Laborers Vacation Trust, 463 U.S. 1, 23-24, 103 S. Ct. 2841, 77 L. Ed.2d 420 (1983); King, 337 F.3d at 424-25. Although completely preempted claims are rare, they are held to satisfy the well-pleaded complaint requirements of Mottley and Gully.

\* \* \*

We have noted our obligation "to construe removal jurisdiction strictly because of the 'significant federalism concerns' implicated" by it. Maryland Stadium Auth. v. Ellerbe Becket Inc., 407 F.3d 255, 260 (4th Cir. 2005) (quoting Mulcahey, 29 F.3d at 151). "Federalism concerns strongly counsel against imputing to Congress an intent to displace a whole panoply of state law . . . absent some clearly expressed direction." Custer v. Sweeney, 89 F.3d 1156, 1167 (4th Cir. 1996) (internal quotes omitted). Consistent with these principles, we have recognized that state law complaints usually must stay in state court when they assert what appear to be state law claims. See, e.g., Harless v. CSX Hotels, Inc., 389 F.3d 444, 450 (4th Cir. 2004); King, 337 F.3d at 424; Darcangelo v. Verizon Communications, Inc., 292 F.3d 181, 186 (4th Cir. 2002); Cook v. Georgetown Steel Corp., 770 F.2d 1272, 1274 (4th Cir. 1985). The presumption, in other words, is against finding complete preemption. Custer, 89 F.3d at 1167.

But that presumption is rebuttable, because federal law occasionally "displace[s] entirely any state cause of action." Franchise Tax Board, 463 U.S. at 23, 103 S. Ct. 2841. When it does, federal law then "provide[s] the exclusive cause of action for such claims," and therefore "there is . . . no such

7

thing as a state-law claim" in the regulated area. Beneficial, 539 U.S. at 11, 123 S. Ct. 2058. The doctrine of complete preemption thus prevents plaintiffs from "defeat[ing] removal by omitting to plead necessary federal questions." Franchise Tax Board, 463 U.S. at 22, 103 S. Ct. 2841. It thereby ensures compliance with congressional intent that federal courts be available to resolve certain claims which are peculiarly national in scope. Defendants' burden, then, is to demonstrate that a federal statute indisputably displaces any state cause of action over a given subject matter. In assessing whether defendants have carried their burden, we may not conflate "complete preemption" with "conflict" or "ordinary" preemption. While these two concepts are linguistically related, they are not as close kin jurisprudentially as their names suggest. Complete preemption is a "jurisdictional doctrine," while ordinary preemption simply declares the primacy of federal law, regardless of the forum or the claim. Sonoco Prods., 338 F.3d at 370-71. Ordinary preemption has been categorized as a federal "defense to the allegations." Caterpillar, 482 U.S. at 392, 107 S. Ct. 2425. And as a mere defense, the "preemptive effect of a federal statute . . . will not provide a basis for removal." Beneficial, 539 U.S. at 6, 123 S. Ct. 2058 (internal citations omitted). See also Rivet, 522 U.S. at 475-76, 118 S. Ct. 921; Caterpillar, 482 U.S. at 392-93, 107 S. Ct. 2425; Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 66, 107 S. Ct. 1542, 95 L. Ed.2d 55 (1987) ("even an 'obvious' pre-emption defense does not, in most cases, create removal jurisdiction"); Franchise Tax Board, 463 U.S. at 14, 28, 103 S. Ct. 2841. Even if preemption forms the very core of the litigation, it is insufficient for removal. Caterpillar, 482 U.S. at 393, 107 S. Ct. 2425.

By contrast, when complete preemption exists, there is "no such thing" as the state action, Beneficial, 539 U.S. at 11, 123 S. Ct. 2058, since the federal claim is treated as if it appears on the face of the complaint because it effectively displaces the state cause of action. Complete preemption thus "transform[s] the plaintiff's state-law claims into federal claims." Rivet, 522 U.S. at 476, 118 S. Ct.

8

921.  Since the complaint is then understood to state a federal question, the well-pleaded complaint rule is satisfied, thereby justifying removal under § 1441(b).

Recognizing that complete preemption undermines the plaintiff's traditional ability to plead under the law of his choosing, the Supreme Court has made clear that it is "reluctant" to find complete preemption. Metro. Life, 481 U.S. at 65.  The Court has, in fact, found complete preemption in only three statutes.  See Beneficial, 539 U.S. at 10-11, 123 S. Ct. 2058 (National Bank Act); Metro. Life, 481 U.S. at 66-67, 107 S. Ct. 1542 (ERISA § 502(a)); Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists, 390 U.S. 557, 560, 88 S. Ct. 1235, 20 L. Ed.2d 126 (1968) (Labor Management Relations Act ("LMRA") § 301). Unsurprisingly, therefore, the Court has articulated exacting standards that must be met before it will find complete preemption.  Most notably, the congressional intent that state law be entirely displaced must be clear in the text of the statute. See Metro. Life, 481 U.S. at 65-66, 107 S. Ct. 1542.

* * *

Nothing in Beneficial or Rosciszewski altered the general principle that defendants seeking removal under the doctrine of complete preemption bear a significant burden.  They must establish congressional intent to extinguish similar state claims by making the federal cause of action exclusive.  And as we must construe removal strictly, reasonable doubts must be resolved against the complete preemption basis for it. Maryland Stadium Auth., 407 F.3d at 260.

Lontz v. Tharp, 413 F. 3d 435, 439-41 (4th Cir. 2005).

In this case both sides rely on provisions of the Pipeline Safety Act to support their position on the issue of preemption. Removing defendants point to 49 U.S.C. §60104(c) which provides that a "State authority may not adopt or continue in force safety standards for interstate pipeline facilities or

interstate pipeline transportation."  Defendants also point to the Act's anti-retaliation provision which makes it unlawful for a contractor or subcontractor to discharge, or otherwise discriminate against an employee who provides information relating to violation of any order, regulation or standard relating to pipeline safety.  See 49 U.S.C. § 60129(a).  This "whistleblower" provision contains an enforcement procedure under which an aggrieved employee may file a complaint with the Secretary of Labor.  See 49 U.S.C. § 60129(b).  A successful complainant may be reinstated to his former position and awarded back pay and other damages.  See id.

Plaintiff, on the other hand, maintains that 49 U.S.C. §60120(c), makes clear a Congressional intent to preserve state tort law claims.  That statute states "[t]his chapter does not affect the tort liability of any person."

"To rebut the presumption against complete preemption, a defendant must demonstrate that 'Congress'[s] intent in enacting the federal statute at issue' was to extinguish the state-law claim."  Skidmore v. Norfolk Southern Ry. Co., 1 F.4th 206, 212 (4th Cir. 2021) (quoting Metro. Life Ins. Co. v. Mass., 471 U.S. 724, 738 (1985)).  "This requires a showing that:  (1) the preempting statute displays a clear congressional intent to 'entirely displace' state law; and (2) the preempting statute

10

creates an exclusive federal cause of action in an area of 'overwhelming national interest.'"  Id. (quoting Lontz, 413 F.3d at 441).

Applying this test, defendants have failed to demonstrate plaintiff's wrongful discharge claim is preempted by the Pipeline Safety Act.  To be sure, the preemption provision contained in the Act is expansive.  Of this expansiveness, one court wrote:

> To help establish nationally uniform standards, Congress expressly eliminated the states' role in regulating interstate pipeline safety.  Under a subsection entitled "Preemption," Congress concluded that a "State authority may not adopt or continue in force safety standards for interstate pipeline facilities or interstate pipeline transportation."  49 U.S.C. § 60104(c) (emphasis added). . . .  In short, Congress decided to address interstate pipeline safety as an exclusive federal matter to the exclusion of state authority.

> The scope of the Pipeline Safety Act's preemption provision is extensive.  The statutory scheme demonstrated Congressional intent to interpret "safety standard"—and thus the preemption provision—broadly. . . .  [T]he federal government has plenary power to determine how to keep pipelines safe at every stage from design through construction, testing, operation, maintenance, and even replacement.  Because Congress reserved for the federal government almost unbridled authority and discretion to regulate the safety of interstate pipelines, states have virtually no authority to make safety-related determinations.

> Courts interpreting the Pipeline Safety Act's express preemption provision have uniformly recognized its expansive scope.

* * *

The text of the Pipeline Safety Act and the caselaw applying it leave no doubt that it is the exclusive responsibility and prerogative of the federal government to regulate interstate pipeline safety to the exclusion of any competing regulation by the states.

Enbridge Energy, Limited Partnership v. Whitmer, 813 F. Supp.3d 777, 793-94 (W.D. Mich. 2025).  As the foregoing makes clear, the federal law is designed to protect federal pipeline safety standards from competing state standards.

Broad as the preemption provision is, there is nothing in it to suggest that it encompasses plaintiff's Harless claim. The preemption statute itself is addressed to state actors and is concerned with state safety standards for interstate pipelines.  There is nothing in the statute to indicate or suggest Congressional intent to displace a state-law tort claim by an aggrieved employee against his employer.  This conclusion is underscored by 49 U.S.C. §60120(c) which expressly preserves state tort law claims.  See Cheverez v. Plains All American Pipeline, LP, Case No. CV 15-4113 PSG (JEMx), 2016 WL 4771883, at *5 (C.D. Cal. Mar. 4, 2016) ("Defendants argue that the savings clause [49 U.S.C. § 60120(c)] cannot supersede the express preemption provision. . . . Defendants' reading contradicts the plain text of the savings clause, which suggests that Congress sought to protect a private litigant's tort

12

claims, even where they bear on the operation of pipes otherwise regulated by the PSA [Pipeline Safety Act]"); American Energy Corp. v. Texas Eastern Transmission, LP, 701 F. Supp 2d 921, 931 (S.D. Ohio 2010) ("The PSA does preempt Ohio property or tort law."); Stutler v. Marathon Pipeline Co., 998 F. Supp. 968, 970 (S.D. Ind. 1998) (remanding case alleging tort claims to state court because Section 60120(c) "is not limited to any one specific section of the HLPSA [Pipeline Safety Act], but rather, applies to the entire Act [and] clearly sets forth Congress' intention not to preempt tort claims"); Slavich v. Broadhurst, Civ. A. No. 93-1646, 1993 WL 500800, at *4 (E.D. La. Nov. 29, 1993)("Plaintiff seeks money damages for loss of his oyster crop due to the activities of Defendants.  If there were no Natural Gas Pipeline Safety Act, there would be absolutely no question that State law would provide Plaintiff with a cause of action against Defendants. . . .  Because this court finds that Congress did not intend to make Plaintiff's cause of action a Federal cause of action and removable despite Plaintiff's pleading only State law clais, 'complete preemption' does not exist in this case and the 'well-pleaded complaint rule' requires that this matter be remanded to State Court."); see also Geier v. American Honda Motor Co., Inc., 529 U.S. 861, 868 (2000) (refusing to read a preemption clause in the National

13

Traffic and Motor Vehicle Safety Act broadly to exclude tort claims where Act also included a "saving clause" because "a reading of the express preemption provision that excludes common law tort actions gives actual meaning to the saving clause's literal language, while leaving adequate room for state tort law to operate").  Put simply, §60104(c) does "not work to completely preempt the kind of state law claim[] that plaintiff[] [is] pressing."  Lontz, 413 F.3d at 442.

The Fourth Circuit's decision in Rayner v. Smith, 873 F.2d 60 (4th Cir. 1989), does not compel a different result.  In Rayner, the United States Court of Appeals for the Fourth Circuit held that the "whistleblower" provision in the Federal Railroad Safety Act ("FRSA"), 45 U.S.C. § 441, was the aggrieved employee's sole remedy for wrongful discharge.  See id. at 64. Rayner is distinguishable on several fronts.  First, the express preemption provision in Rayner was significantly broader than the one in the Pipeline Safety Act.  Second, there was no saving clause in the FRSA expressly reserving an individual's right to bring tort claims and, therefore, no expression of congressional intent to preserve state remedies as there clearly is in the Pipeline Safety Act.

For all these reasons, the court granted plaintiff's motion to remand while denying their request for costs and fees.

14

Under 28 U.S.C. § 1447(c), "[a]n order remanding [a] case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." The court looks to the "reasonableness of the removal" to determine whether an award of attorneys' fees is appropriate. Martin v. Franklin Capitol Corp., 546 U.S. 132, 141 (2005). "Absent unusual circumstances, courts may award attorney fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." Id. The court may take into consideration unusual circumstances that warrant award of attorney's fees, such as "a plaintiff's delay in seeking remand or failure to disclose facts necessary to determine jurisdiction." Id. There is no presumption in favor of awarding attorney's fees nor against an award of fees under § 1447 and the matter is left to the court's discretion. See id. at 139.

"Although there is no bright line rule as to the definition of 'objectively reasonable,' courts that have applied the Martin standard typically focus upon whether the removing party has offered a credible reason for removal, even if it later becomes clear that the removing party was incorrect on the facts or the law." Mobile County Bd. of Health v. Sackler, Civil Action No.

15

1:19-01007-KD-B, 2020 WL 448246, at *2 (S.D. Ala. Jan. 28, 2020).

In this case, the court could not find that defendants lacked an objectively reasonable basis for removal and, therefore, denied plaintiff's motion for costs and fees.

## IV.   Conclusion

"Removal statutes do not create jurisdiction.  They are instead a mechanism to enable federal courts to hear the cases that are already within their original jurisdiction."  Lontz v. Tharp, 413 F. 3d 435, 444 (4th Cir. 2005).  For the reasons set forth above, the court **GRANTED** plaintiff's motion to remand.

The Clerk is further directed to send a copy of this Memorandum Opinion to all counsel of record, and to forward a copy of the same to the Clerk of the Circuit Court of Monroe County.

IT IS SO ORDERED this 11th day of May, 2026.

ENTER:

David A. Faber
Senior United States District Judge

16